JAMES L. LANDPHIER and GLADYS A. LANDPHIER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Landphier v. Commissioner
Docket No. 1696-78.
United States Tax Court
T.C. Memo 1981-145; 1981 Tax Ct. Memo LEXIS 603; 41 T.C.M. (CCH) 1172; T.C.M. (RIA) 81145; March 26, 1981. Joseph Weigel, for the petitioners. Wayne B. Henry, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure.[1] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent *604 determined deficiencies in petitioners' Federal income taxes for the years 1972, 1973, and 1974 in the amounts of $ 714, $ 5,631, and $ 6,223, respectively. The issues for decision are (1) whether petitioners or a trust is taxable on certain income earned during the years involved which was assigned to the trust; (2) whether petitioners sustained a nonbusiness bad debt during 1972 in the amount of $ 880; and (3) whether the statute of limitations bars the assessment of income taxes for the years 1972 and 1973. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners resided in Sun Prairie, Wisconsin, at the time of filing their petition herein. Petitioners timely filed joint Federal income tax returns for the taxable years 1972 through 1974 with the Internal Revenue Service Center, Kansas City, Missouri. On October 31, 1972, petitioner James L. Landphier (hereinafter petitioner) executed a document entitled "Declaration of Trust of this Constitutional Trust." The document was executed by petitioner for the purpose of creating a trust known as the James L. Landphier Family Estate (A Trust) (hereinafter Trust). The *605 declared purpose of the Trust was: "* * * to accept rights, title and interest in real and personal properties conveyed by THE GRANTOR CREATOR HEREOF. Included therein is the exclusive use of his or her lifetime services and ALL OF his or her EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever * * *." Petitioner's wife Gladys A. Landphier (hereinafter Gladys) and his mother-in-law Hattie M. Derr (hereinafter Hattie) were the initial trustees of the Trust. On October 31, 1972, petitioner and Gladys were appointed lifetime trustees and on November 15, 1972, Hattie resigned as a trustee. Thereafter during the years herein there were no further changes in the trustees. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. Petitioner executed documents on November 6, 1972, for the purpose of conveying his real and personal property, including certain securities and insurance policies to the Trust. The real property, including petitioner's home, was jointly owned by petitioner and his wife prior *606 to the conveyance to the Trust. Gladys transferred her interest in the real estate and personal property including the exclusive use of her lifetime services and all of the currently earned remuneration, to petitioner with the understanding that he would convey such property to the Trust. Included in the conveyance were household, office equipment and furniture used in a bookkeeping service. Also, on November 6, 1972, petitioner executed a document to convey the exclusive use of his lifetime services and all currently earned remuneration to the Trust. In exchange for the real and personal property, and the conveyance of petitioners' earned income, the Trust issued 100 units of beneficial interest to petitioner on November 6, 1972. On this same date petitioner transferred 50 units to Gladys in return for her contribution of property to the Trust. After additional transfers by petitioner and Gladys on November 6, 1972, the units of beneficial interest were held as follows: Units
James L. Landphier
10
Gladys A. Landphier
20
Larry Landphier
35
Susan Landphier
35
The rights of the owners of the beneficial interests are set forth in the certificate of *607 beneficial interest, which certificates provide that "Benefits hereby conveyed consist solely of the emoluments as distributed by the action of The Trustees and nothing more." With respect to trustee powers, the Declaration of Trust provides "Trustees' powers shall be construed as general powers of citizens of the United States of America, to do anything any citizen may do in any state or country, subject to the restrictions herein noted." The Trust document does not provide for any material restrictions on the actions of the trustees, but to the contrary, the document provides "A Minute of Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such act is within their power." Prior to and during the years herein petitioners operated a bookkeeping service performing various bookkeeping services for clients on a fee basis. Although the fees received for bookkeeping services were deposited in the Trust bank account, there was no other visual or substantive change in the operation of the bookkeeping service before or after the formation of the Trust. On October 31, 1972, petitioner and Gladys entered into an employment contract *608 with the Trust which provided that petitioner would serve as the Executive Manager and Gladys would serve as Executive Secretary, both to serve for the life of the Trust. The agreement further provided that "The Managers shall be entitled to remuneration for their services and shall from time to time submit statements for their consultant fees for an amount mutually agreed upon between the Managers and the Trustees, substantiated by the minutes of the Trust." During each of the years 1972 through 1974, the Trust paid personal expenses of petitioner and Gladys, including housing, transportation, health care, clothing, education and vacations. In addition the Trust paid petitioner and Gladys consulting fees totalling $ 4,309 and $ 4,964 for the years 1973 and 1974, respectively, which petitioners reported on their income tax returns. The consulting fee was based on the personal needs of petitioner and Gladys and not based on the services performed. Since its creation, no additional personal or real property has been transferred to the Trust and no distributions have been made to beneficiaries other than petitioner and Gladys. During 1972, 1973, and 1974, petitioner performed *609 services as an employee driving a truck for Motor Transport Company. All wages petitioner received for such services after the Trust was formed were deposited in the Trust bank account. Gladys also performed services as an employee and deposited her wages in the Trust bank account after the Trust was formed. Both petitioner and Gladys were under the direct supervision of their employers and both had complete control of the wages earned during the years herein. During 1972, 1973, and 1974, petitioners earned wages as employees in the amounts of $ 1,878, $ 18,389 and $ 19,918, respectively, which they failed to report as income. In addition, Gladys failed to report income she earned from her bookkeeping business in the amounts of $ 4,796 and $ 4,700 for the years 1973 and 1974, respectively. Also, petitioners failed to report a long-term capital gain in the amount of $ 72 they realized in 1973 and failed to report interest income and rental income they earned during 1974 in the amounts of $ 51 and $ 80, respectively. All of the above amounts were improperly reported by the Trust. On November 29, 1963, petitioner loaned his brother Philip Landphier (hereinafter Philip) $ 1000. *610 On this same date Philip and his wife executed a promissory note in the same amount. To secure the loan Philip and his wife executed a chattel mortgage which pledged a 1953 GMC 1/2 ton pickup truck and a 1952 B Model John Deere tractor. The debtors made a few small payments on the debt through 1965, after which no further payments were made. Petitioner made various demands of his brother to repay the debt to no avail. Sometime prior to 1972, petitioner was told he could take his security as payment on the debt. However, at this time the security had no value. Sometime during 1971, petitioner became aware that his brother had lost a piece of real estate by foreclosure and believed that Philip's financial condition was very poor. Petitioner deducted the unpaid balance of the debt in 1972, since petitioners were of the opinion that the debt had become totally worthless. Petitioners filed their 1972 income tax return on May 18, 1973, and their 1973 income tax return on or before April 15, 1974. On October 13, 1975, respondent and petitioners' executed Form 872, Consent Fixing Period of Limitation Upon Assessment of Income Tax, extending the period for assessing additional income *611 tax for the years 1972 and 1973 until December 31, 1977. Respondent mailed a statutory notice of deficiency for the years 1972 and 1973 to petitioners' last known address on November 23, 1977. The statutory notice of deficiency was mailed by respondent to petitioners before the statute of limitation barred assessment of additional income taxes for the years 1972 and 1973. OPINION The first issue to consider is whether petitioners or the Trust is taxable on the various amounts of income earned during the years herein. Respondent's basic position with regard to this issue is that the Trust established by petitioner is illusory and has no economic significance and should be disregarded for income tax purposes. In addition, respondent sets forth alternative arguments to support his position that the income reported by the Trust is properly taxable to petitioners. Since we fully agree with respondent's basic position, our opinion will be limited to this extent. Petitioners argues that they have a constitutional right to enter into a contract with the Trust for their services and to convey their property to the Trust. Further, they argue that since a valid trust was created *612 the income earned from their services and property is properly taxable to the Trust. Petitioners recognize they performed their services in the same manner both before and after formation of the Trust, but maintain that the Trust had the right to engage petitioners as independent contractors and to vend their services to third parties. The petitioners also point out that since the bookkeeping service and their other assets were in fact transferred to the Trust at least the income from these sources should be recognized as that of the Trust. Although it is clear that the income earned by petitioners for their services as employees is taxable to them since they earned and maintained control over the income in spite of the formation of the Trust under the doctrine set forth in Lucas v. Earl, 281 U.S. 111 (1930), the facts in this case compel us to go beyond this doctrine and to concur with respondent's determination that the Trust has no economic substance and, on this basis must be totally disregarded for income tax purposes. Markosian v. Commissioner, 73 T.C. 1235 (1980). Based on the various documents executed by petitioners, the appearance *613 of a trust was established. However, upon an examination of the Trust document and the actual operation of the Trust, it is without question that the Trust rests on a foundation of meaningless pieces of paper. As we said in Markosian v. Commissioner, supra at 1241, "When the form of the transaction has not, in fact, altered any cognizable economic relationships, we will look through that form and apply the tax law according to the substance of the transaction. Furman v. Commissioner, 45 T.C. 360 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967)." In the instant case we see no change in economic relationships. Under the circumstances in this case it was virtually impossible for petitioners to change the economic relationship between themselves and the other beneficiaries. Petitioners had no meaningful source of income other than from their wages which compelled the Trust to pay the majority of their personal expenses. But more important is the grant of absolute and complete discretion to petitioners as lifetime trustees by the trust language "A Minute of Resolutions of The Trustees authorizing what it is they determine to do *614 or have done shall be evidence that such act is within their power." Such an unbridled power gives petitioners as trustees the same control over the property conveyed to the Trust as they enjoyed prior to the formation of the Trust. Accordingly, in spite of the Trust, there was no change in petitioners' economic position. In addition, we do not accept as an economic reality the assignment of petitioners' future services and income to the Trust solely in exchange for an indefinite payment for such services without assurance of complete control of the future income to be earned by petitioners. In fact, there was no understanding concerning the payment of consulting fees for petitioners' services. Instead petitioners were paid an amount based on their personal needs. Under these circumstances we cannot find that petitioners had a meaningful or enforceable employment contract with the Trust. Based on the facts herein, it is clear that the Trust had no independent economic significance during the years at issue and the Trust should be disregarded for income tax purposes. For other cases where we held that trust arrangements similar to the one herein were not effective to shift *615 the incidence of taxation from the taxpayer to a trust, see Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980); Markosian v. Commissioner, supra; Wesenberg v. Commissioner, 69 T.C. 1005, 1011 (1978); Vnuk v. Commissioner, 621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; Horvat v. Commissioner, T.C. Memo. 1977-104, affd. by unpublished order (7th Cir. June 7, 1978), cert. denied 440 U.S. 959 (1979); Taylor v. Commissioner, T.C. Memo. 1980-313; and Gran v. Commissioner, T.C. Memo. 1980-558. The next issue is whether petitioners sustained a nonbusiness bad debt during the year 1972 in the amount of $ 880. Respondent contends that petitioners have failed to establish the time the debt became worthless. Petitioners maintain that the debt is deductible in 1972 since the debtors were insolvent and could not repay the debt. On November 29, 1963, petitioners loaned Philip, petitioner's brother, $ 1000. On the same date Philip and his wife executed a promissory note in the same amount. On December 3, 1963, the debtors executed a *616 chattel mortgage which pledged a 1953 GMC 1/2 ton pickup truck and a 1952 B Model John Deere tractor to secure the $ 1000 debt. After the debtors made a few small payments on the debt through 1965, no further payments were made. Subsequently petitioner made oral requests for payment from his brother without success. Petitioners made no other attempt to collect the debt or to foreclose on their security. During September 1971, a foreclosure sale was held on certain real estate owned by petitioner's brother and his wife, but petitioners did not participate in this action. Sometime after petitioners' received the chattel mortgage, the property was disposed of by the debtors without petitioners' knowledge. Although petitioners do not know when their security was lost they were aware of the debtor's poor financial condition during 1972. A debt becomes worthless in the year in which identifiable events clearly mark the futility of any hope of recovery. The determination of when such event occurs is based on an objective assessment of all the relevant facts and circumstances. Section 1.166-2(a), Income Tax Regs.; James A. Messer Co. v. Commissioner, 57 T.C. 848, 861 (1972). *617 In the instant case the testimony establishes that the debtors were unable to liquidate the debt because of lack of financial resources. However, petitioners have failed to identify the year in which they became aware that attempts to collect the debt would be fruitless. Accordingly, we must agree with respondent that petitioners have failed to establish the year in which the debt became worthless and deny petitioners' nonbusiness bad debt deduction. The final issue is whether the statute of limitations bars the assessment of an income tax deficiency for the years 1972 and 1973. Although it appears that petitioners have abandoned this issue since their brief does not address it, we shall consider the issue in any event. The facts are clear that the statute of limitations on the assessment of additional income taxes had not run at the time the statutory notice of deficiency was mailed on November 23, 1977, since the parties had timely extended the period for assessment of additional income taxes for 1972 and 1973 to December 31, 1977. Since the statutory notice of deficiency was properly mailed to petitioners and a timely petition was filed in this Court, the period for making *618 an assessment is suspended until the decision of this Court becomes final, and for 60 days thereafter. Section 6503(a)(1). To reflect the conclusions reached herein Decision will be entered under Rule 155. Footnotes
1. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩