WALTER W. YORK FAMILY ESTATE (A TRUST) MARY L. YORK, TRUSTEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; WALTER W. YORK and MARY LOU YORK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
York Family Estate v. Commissioner
Docket Nos. 2247-78, 2420-78.[1]
United States Tax Court
T.C. Memo 1981-265; 1981 Tax Ct. Memo LEXIS 481; 41 T.C.M. (CCH) 1612; T.C.M. (RIA) 81265; May 28, 1981. Joseph Weigel, for the petitioners. Wayne B. Henry, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined *482 the following deficiencies in petitioners' Federal income tax: Taxable Year
Deficiency
Walter W. York Family Estate
1973
$ 2,633.00
(A Trust) Mary L. York, Trustee
1974
1,749.00
(Docket No. 2247-78)
Walter W. York and Mary Lou
1973
$ 8,093.00
York (Docket No. 2420-78)
1974
1,871.00
Concessions having been made the issues for decision are (1) whether petitioners or a trust is taxable on farm and interest income earned during the years in issue; (2) whether the income of the trust is taxable to petitioners under sections 671 through 677 of the Internal Revenue Code of 1954; [3] and (3) in the alternative, if the income is taxable to the trust, whether the trust is an association taxable as a corporation under section 7701. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners Walter W. York and Mary L. York resided in Lake Geneva, Wisconsin, at the time of filing their petition herein. Petitioners timely filed joint Federal income tax returns for the taxable years 1973 and *483 1974 with the Internal Revenue Service Center, Kansas City, Missouri. The Walter W. York Family Estate (A Trust) Mary L. York, Trustee, the petitioner in docket no. 2247-78, had its principal office in Lake Geneva, Wisconsin, at the time of filing its petition herein. The trust timely filed its Federal income tax returns for the taxable years 1973 and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. On September 22, 1972, petitioner Walter W. York (hereinafter petitioner) executed a document entitled "Declaration of Trust of this Constitutional Trust." The document was executed by petitioner for the purpose of creating a trust known as the Walter W. York Family Estate (A Trust) (hereinafter Trust). The declared purpose of the Trust was: "* * * to accept rights, title and interest in real and personal properties conveyed by THE GRANTOR CREATOR HEREOF. Included therein is the exclusive use of his or her lifetime services and ALL OF his or her EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that Walter W. York can maximize his or her lifetime efforts through the utilization of his or her Constitutional Rights; * * *." Petitioner's *484 wife Mary L. York (hereinafter May) and his daughter Carolyn Smith (hereinafter Carolyn) were the initial trustees of the Trust. On September 22, 1972, petitioner and Mary were appointed trustees to hold office for the life of the Trust. On December 5, 1974, Carolyn resigned as a trustee and Keith York, petitioner's son was appointed a trustee. Thereafter during the years herein there were no further changes in the trustees. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. Petitioner executed other documents on December 26, 1972, for the purpose of conveying his farm real estate, farm equipment, dairy cattle, and other personal property, including household furnishings and life insurance to the Trust. Mary transferred her interest in all real estate to petitioner prior to his conveyance to the Trust. In addition, on December 26, 1972, petitioner executed a document to convey the exclusive use of his lifetime services and all of his currently earned remuneration accruing therefrom to the Trust. In exchange *485 for the real and personal property, and the conveyance of petitioner's earned income, the Trust issued all of its 100 units of beneficial interest to petitioner on December 26, 1972. On this same date petitioner transferred 50 units to Mary and, thereafter, on December 26, 1972, petitioner and Mary made transfers so that each of their ten children owned 5 units and petitioner and Mary each owned 25 units. The rights of the owners of the units of beneficial interest were prescribed in the Declaration of Trust and the certificates of beneficial interest. The Declaration of Trust provides, in part, that "* * * Ownership of the beneficial certificate shall not entitle the holder to any legal title in or to The Trust property, nor any undivided interest therein, nor in the management thereof, nor shall the death of the holder entitle his heirs or legal representatives to demand any partition or division of the property of The Trust, * * *." This document goes on to declare that "It is expressly declared that A Trust, and not a partnership, is hereby created; and that neither the Trustees, officers, or certificate holders, present or future, have or possess any beneficial interest in *486 the property or assets of said Trust * * *." The rights of the owners of the beneficial interest are also set forth in the Certificate of Beneficial Interest, which certificates provide that "Benefits hereby conveyed consist solely of the emoluments as distributed by the actions of the trustees and nothing more. * * *" The trustees were authorized, by the Declaration of Trust, "* * * to do anything any citizen may do in any state or country * * *." Further, "* * * Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such an act is within their power. * * *" Prior to and during the years herein petitioner operated a dairy farm as a sole proprietor. Although petitioner's income from the farming operation was deposited in the Trust bank account, there was no other visual or substantive change in the operation of the sole proprietorship before or after the formation of the Trust. On December 26, 1972, petitioner and Mary entered into an employment contract with the Trust which provided that petitioner would serve as the Executive Manager and Mary would serve as Executive Secretary, both to serve for the life of the Trust. *487 The agreement further provided that "The Managers shall be entitled to remuneration for their services and shall from time to time submit statements for their consultant fees for an amount mutually agreed upon between the Managers and the Trustees, substantiated by the minutes of the Trust." During each of the years 1973 and 1974, the Trust paid personal expenses of petitioner and Mary, including housing, life insurance, transportation, health care, and education. In addition, the Trust paid petitioner and Mary consulting fees totaling $ 2,450.71 and $ 6,000 for the years 1973 and 1974, respectively. The consulting fee was based on the personal needs of petitioner and Mary and not based on the services performed. On its 1973 and 1974 Federal income tax returns the Trust reported the income petitioners earned from the dairy farm operation. Also, the Trust reported capital gain income from the sale of farm capital assets. In addition the Trust deducted for each of the years "administrative" expenses which consisted of petitioner's personal, living and family expenses and "consulting fees" paid by the Trust to petitioner and Mary. After the Trust was formed petitioner and Mary *488 reported the consulting fees received from the Trust on their 1973 and 1974 Federal income tax returns. Respondent determined that all of the income from the farm operation, interest income, and the capital gain reported by the Trust are income of petitioners, not the Trust. In the alternative, respondent determined that if the income and expenses are taxable to the Trust, then the Trust should be treated as an association taxable as a corporation pursuant to section 7701. OPINION The first issue to consider is whether petitioners or the Trust is taxable on the various amounts of income earned during the years herein. Respondent's basic position with regard to this issue is that the Trust established by petitioner is illusory and has no economic significance and should be disregarded for income tax purposes. In addition, respondent sets forth alternative arguments to support his position that the income reported by the Trust is properly taxable to petitioners. Since we fully agree with respondent's basic position, our opinion will be limited to this extent. Petitioners argue that they have a constitutional right to enter into a contract with the Trust for their services *489 and to convey their property to the Trust. Further, they argue that since a valid trust was created the income earned from their services and property is properly taxable to the Trust. Petitioners recognize they performed their services in the same manner both before and after formation of the Trust, but maintain that the Trust had the right to engage petitioners as independent contractors and to vend their services to third parties. The petitioners also point out that since the farm land and equipment, and their other assets were in fact transferred to the Trust at least the income from these sources should be recognized as that of the Trust. Althogh it is clear that the income earned by petitioner from the farming operation is taxable to him since he earned and maintained control over the income in spite of the formation of the Trust under the doctrine set forth in Lucas v. Earl, 281 U.S. 111 (1930), the facts in this case compel us to go beyond this doctrine and to concur with respondent's determination that the Trust has no economic substance and, on this basis must be totally disregarded for income tax purposes. Markosian v. Commissioner, 73 T.C. 1235 (1980). *490 Based on the various documents executed by petitioners, the appearance of a trust was established. However, upon an examination of the Trust document and the actual operation of the Trust, it is without question that the Trust rests on a foundation of meaningless pieces of paper. As we said in Markosian v. Commissioner, supra at 1241, "When the form of the transaction has not, in fact, altered any cognizable economic relationships, we will look through that form and apply the tax law according to the substance of the transaction. Furman v. Commissioner, 45 T.C. 360 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967)." In the instant case we see no change in economic relationships. Under the circumstances in this case it was virtually impossible for petitioner to change the economic relationship between himself and the other beneficiaries. Petitioner had no meaningful source of income other than the farm income which compelled the Trust to pay the majority of their personal expenses. But more important is the grant of absolute and complete discretion to petitioners as life-time trustees by the trust language "A Minute of Resolutions *491 of The Trustees authorizing what it is they determine to do or have done shall be evidence that such act is within their power." Such an unbridled power gives petitioners as trustees the same control over the property conveyed to the Trust as they enjoyed prior to the formation of the Trust. Accordingly, in spite of the Trust, there was no change in petitioners' economic position. In addition, we do not accept as an economic reality the assignment of petitioner's future services and income to the Trust solely in exchange for an indefinite payment for such services without assurance to petitioner of complete control of the future income to be earned by him. In fact, there was no understanding concerning the payment of consulting fees for petitioners' services. Instead petitioners were paid an amount based on their personal needs. Under these circumstances we cannot find that petitioners had a meaningful or enforceable employment contract with the Trust. Based on the facts herein, it is clear that the Trust had no independent economic significance during the years at issue and the Trust should be disregarded for income tax purposes. For other cases where we held that trust *492 arrangements similar to the one herein were not effective to shift the incidence of taxation from the taxpayer to a trust, see Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980); Markosian v. Commissioner, supra; Wesenberg v. Commissioner, 69 T.C. 1005, 1011 (1978); Vnuk v. Commissioner, 621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; Horvat v. Commissioner, T.C. Memo. 1977-104, affd. by unpublished order (7th Cir. June 7, 1978), cert. denied 440 U.S. 959 (1979); Taylor v. Commissioner, T.C. Memo. 1980-313; and Gran v. Commissioner, T.C. Memo. 1980-558. To reflect the conclusions reached herein Decisions will be entered under Rule 155. Footnotes
1. These cases were consolidated for the purposes of trial, briefing, and opinion.↩
2. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩
3. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩