JAMES O. JACOBSON FAMILY ESTATE, A TRUST, KAREN JACOBSON, TRUSTEE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Jacobson Family Estate v. Commissioner
Docket Nos. 2674-78, 2675-78, 2851-78, 2852-78, 2853-78.
United States Tax Court
T.C. Memo 1981-261; 1981 Tax Ct. Memo LEXIS 477; 41 T.C.M. (CCH) 1599; T.C.M. (RIA) 81261; May 28, 1981. Joseph Weigel, for the petitioners. Wayne B. Henry, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure.[2] The Court agrees with the adopts his opinion which is set forth *478 below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Taxable Year
Deficiency
James O. Jacobson Family Estate,
1973
$ 31,674.00
A Trust, Karen Jacobson, Trustee
1974
9,867.00
(Docket No. 2674-78)
James O. Jacobson and Karen G.
1973
$ 18,396.00
Jacobson (Docket No. 2675-78)
1974
15,524.00
Mark Jacobson, A Minor, by his
1974
$ 227.00
next friend, Guardian and Father,
James O. Jacobson (Docket No.
2851-78)
Steven Jacobson, A Minor, by his
1974
$ 227.00
next friend, Guardian and Father,
James O. Jacobson (Docket No.
2852-78)
Daniel Jacobson, A Minor, by his
1974
$ 227.00
next friend, Guardian and Father,
James O. Jacobson (Docket No.
2853-78)
Concessions having been made the issues for decision are (1) whether petitioners James O. Jacobson and Karen G. Jacobson or a trust is taxable on farm income (loss), dividends, capital gain income, and partnership income earned during the years in issue; (2) whether *479 the income of the trust is taxable to petitioners under sections 671 through 677 of the Internal Revenue Code of 1954; [3] (3) in the alternative, if the income is taxable to the trust, whether the trust is an association taxable as a corporation under section 7701; (5) in the event the Court finds that the trust is a taxable entity or an association taxable as a corporation, whether administrative expenses in the amounts of $ 10,257 and $ 9,039, for 1973 and 1974, respectively are deductible; and (6) whether the statute of limitations bars the assessment of income taxes for the year 1973 as it pertains to docket no. 2675-78. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners James O. and Karen G. Jacobson resided in Elkhorn, Wisconsin, at the time of filing their petition herein. Petitioners timely filed joint Federal income tax returns for the taxable years 1973 and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. The James O. Jacobson Family Estate, A Trust, Karen Jacobson, Trustee, *480 the petitioner in docket no. 2674-78 had its principal office in Elkhorn, Wisconsin, at the time of filing its petition herein. The trust timely filed its Federal income tax returns for the taxable years 1973 and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. Mark Jacobson, Steven Jacobson and Daniel Jacobson, all resided in Elkhorn, Wisconsin at the time they filed their petitions herein. Further, they all timely filed single Federal income tax returns for the year 1974 with the Internal Revenue Service Center, Kansas City, Missouri. On August 8, 1972, petitioner James O. Jacobson (hereinafter petitioner) executed a document entitled "Declaration of Trust of this Constitutional Trust." The document was executed by petitioner for the purpose of creating a trust known as the James Jacobson Family Estate (A Trust) (hereinafter Trust). The declared purpose of the Trust was: "* * * to accept the exclusive use of James Jacobson's lifetime services to include all HIS earned remuneration from any source whatsoever and certain real and personal properties * * *, in exchange for all of the beneficial interest (100 units) of THIS TRUST * * *." Petitioner's wife *481 Karen Jacobson (hereinafter Karen) and Allan Lundgren were the initial trustees of the Trust. On August 17, 1972, petitioner and Karen were appointed trustees to hold office for the life of the Trust and on August 20, 1972, Allan Lundgren resigned. Thereafter during the years herein there were no further changes in the trustees. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. Petitioner executed other documents for the purpose of conveying his real and personal property, including a 50 percent partnership interest in Premium Green Farm and certain stocks and securities to the Trust. Karen transferred her interest in all real estate to petitioner prior to his conveyance to the Trust. In addition, petitioner executed an undated document to convey the exclusive use of his lifetime services and all of his currently earned remuneration accruing therefrom to the Trust. In exchange for the real and personal property, and the conveyance of petitioner's earned income, the Trust issued all of its 100 units of beneficial *482 interest to petitioner on August 17, 1972. On this same date petitioner transferred 50 units to Karen and, thereafter, on July 27, 1973, petitioner and Karen made transfers so that each of their three children owned 25 units and petitioner and Karen owned 10 units and 15 units, respectively. The rights of the owners of the units of beneficial interest were prescribed in the Declaration of Trust and the certificates of beneficial interest. The Declaration of Trust provides, in part, that "* * * Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to the Trust property, nor any individed interest therein, nor in the management thereof, nor shall the death of a holder entitle his heirs or legal representatives to demand any partition or division of the property of the Trust, * * *." This document also declares that "It is expressly decalred [sic] that a Trust, and not a partnership, is hereby created; and that neither the Trustees, Officers, or certificate holders, present or future, have or possess any beneficial interest in the property or assets of said Trust * * *." The rights of the owners of the beneficial interest are also set forth *483 in the Certificate of Beneficial Interest, which certificates provide that "Benefits hereby conveyed consist solely of the emoluments as distributed by the actions of the trustees and nothing more. * * *" The trustees were authorized, by the Declaration of Trust, "* * * to do anything any citizen may do in any state or country * * *." Further, "* * * Resolutions of the Board of Trustees authorizing a special thing to be done shall be evidence that such act is within its power. * * *" Prior to and during the years herein petitioner was a partner is the Premium Green Farm and as a sole proprietor carried on a general farm operation. Although petitioner's distributions from the partnership and his farm operation were deposited in the Trust bank account, there was no other visual or substantive change in the operation of the enterprises before or after the formation of the Trust. On August 17, 1972, petitioner and Karen entered into an employment contract with the Trust which provided that petitioner would serve as the Executive Manager and Karen would serve as Executive Secretary, both to serve for the life of the Trust. The agreement further provided that "The Managers shall *484 be entitled to remuneration for their services and shall from time to time submit statements for their consultant fees for an amount mutually agreed upon between the Managers and the Trustees, substantiated by the minutes of the Trust." During each of the years 1973 and 1974, the Trust paid personal expenses of petitioner and Karen, including housing, transportation, health care, education, charitable contributions, and life and medical insurance premiums. In addition the Trust paid petitioner and Karen consulting fees totaling $ 5,200 and $ 6,000 for the years 1973 and 1974, respectively. The consulting fee was based on the personal needs of petitioner and Karen and not based on the services performed. On its 1973 and 1974 Federal income tax returns the Trust reported the income petitioners earned from the farming operation, dividends and partnership income. Also, the Trust reported capital gain income from the farming operation. In addition the Trust deducted for each of the years "administrative" expenses which consisted of petitioner's personal, living and family expenses and "consulting fees" paid by the Trust to petitioner and Karen. After the Trust was formed petitioner *485 and Karen reported the consulting fees received from the Trust and a distribution made by the Trust on their 1973 and 1974 Federal income tax returns. Petitioners Mark Jacobson, Steven Jacobson and Daniel Jacobson reported a distribution from the Trust for the year 1974 as ordinary income. On September 24, 1973, petitioners James O. Jacobson and Karen G. Jacobson executed Form 872, Consent Fixing Period of Limitation Upon Assessment of Income Tax, extending the period for assessing additional income tax for the year 1973 until December 31, 1977. Respondent mailed a statutory notice of deficiency for the year 1973 to these petitioners' last known address on December 27, 1977. Respondent determined that all of the income and the capital gain reported by the Trust are income of petitioners, not the Trust. In the alternative, respondent determined that if the income and expenses are taxable to the Trust, then the Trust should be treated as an association taxable as a corporation pursuant to section 7701 and that all distributions from the Trust would be taxable as dividends. OPINION The first issue to consider is whether petitioners or the Trust is taxable on the various amounts *486 of income earned during the years herein. Respondent's basic position with regard to this issue is that the Trust established by petitioner is illusory and has no economic significance and should be disregarded for income tax purposes. In addition, respondent sets forth alternative arguments to support his position that the income reported by the Trust is properly taxable to petitioners. Since we fully agree with respondent's basic position, our opinion will be limited to this extent, since it will resolve all remaining issues between the parties except for the statute of limitations issue. Petitioners argue that they have a constitutional right to enter into a contract with the Trust for their services and to convey their property to the Trust. Further, they argue that since a valid trust was created the income earned from their services and property is properly taxable to the Trust. Petitioners recognize they performed their services in the same manner both before and after formation of the Trust, but maintain that the Trust had the right to engage petitioners as independent contractors and to vend their services to third parties. The petitioners also point out that since *487 the partnership interest and their other assets were in fact transferred to the Trust at least the income from these sources should be recognized as that of the Trust. Although it is clear that the income earned by petitioner is taxable to him since he earned and maintained control over the income in spite of the formation of the Trust under the doctrine set forth in Lucas v. Earl, 281 U.S. 111 (1930), the facts in this case compel us to go beyond this doctrine and to concur with respondent's determination that the Trust has no economic substance and, on this basis must be totally disregarded for income tax purposes. Markosian v. Commissioner, 73 T.C. 1235 (1980). Based on the various documents executed by petitioners, the appearance of a trust was established. However, upon an examination of the Trust document and the actual operation of the Trust, it is without question that the Trust rests on a foundation of meaningless pieces of paper. As we said in Markosian v. Commissioner, supra at 1241, "When the form of the transaction has not, in fact, altered any cognizable economic relationships, we will look through that form and *488 apply the tax law according to the substance of the transaction. Furman v. Commissioner, 45 T.C. 360 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967)." In the instant case we see no change in economic relationships. Under the circumstances in this case it was virtually impossible for petitioners to change the economic relationship between themselves and the other beneficiaries. Petitioners had no meaningful source of income other than from the assets transferred to the Trust which compelled the Trust to pay the majority of their personal expenses. But more important is the grant of absolute and complete discretion to petitioners as lifetime trustees by the trust language "A Minute of Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such act is within their power." Such an unbridled power gives petitioners as trustees the same control over the property conveyed to the Trust as they enjoyed prior to the formation of the Trust. Accordingly, in spite of the Trust, there was no change in petitioners' economic position. In addition, we do not accept as an economic reality the assignment of *489 petitioner's future services and income to the Trust solely in exchange for an indefinite payment for such services without assurance to petitioner of complete control of the future income to be earned by him. In fact, there was no understanding concerning the payment of consulting fees for petitioners' services. Instead petitioners were paid an amount based on their personal needs. Under these circumstances we cannot find that petitioners had a meaningful or enforceable employment contract with the Trust. Based on the facts herein, it is clear that the Trust had no independent economic significance during the years at issue and the Trust should be disregarded for income tax purposes. For other cases where we held that trust arrangements similar to the one herein were not effective to shift the incidence of taxation from the taxpayer to a trust, see Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980); Markosian v. Commissioner, supra; Wesenberg v. Commissioner, 69 T.C. 1005, 1011 (1978); Vnuk v. Commissioner, 621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; Horvat v. Commissioner, T.C. Memo. 1977-104, *490 affd. by unpublished order (7th Cir. June 7, 1978), cert. denied 440 U.S. 959 (1979); Taylor v. Commissioner, T.C. Memo. 1980-313; and Gran v. Commissioner, T.C. Memo. 1980-558. The final issue is whether the statute of limitations bars the assessment of an income tax deficiency for the year 1973 as it pertains to petitioners James O. Jacobson and Karen G. Jacobson. Although it appears that petitioners have abandoned this issue since their brief does not address it, we shall consider the issue in any event. The facts are clear that the statute of limitations on the assessment of additional income taxes had not run at the time the statutory notice of deficiency was mailed on December 27, 1977, since the parties had timely extended the period for assessment of additional income taxes for 1973 to December 31, 1977. Since the statutory notice of deficiency was properly mailed to petitioners and a timely petition was filed in this Court, the period for making an assessment is suspended until the decision of this Court becomes final. Section 6503(a)(1). To reflect the conclusions reached herein Decisions will be entered under Rule *491 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: James O. Jacobson and Karen G. Jacobson, docket no. 2675-78; Mark Jacobson, a minor, by his next friend, guardian and father, James O. Jacobson, docket no. 2851-78; Steven Jacobson, a minor, by his next friend, guardian and father, James O. Jacobson, docket no. 2852-78; Daniel Jacobson, a minor, by his next friend, guardian and father, James O. Jacobson, docket no. 2853-78.↩
2. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩
3. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩