CLARENCE J. THELEN AND SUE A. THELEN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Thelen v. Commissioner
Docket Nos. 1945-78, 1978-78, 11443-78, 11662-78.
United States Tax Court
T.C. Memo 1981-302; 1981 Tax Ct. Memo LEXIS 443; 42 T.C.M. (CCH) 109; T.C.M. (RIA) 81302; June 18, 1981. Joseph Weigel, for the petitioners. Wayne B. Henry, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined the following deficiencies and additions to tax under section 6653(a) [3] in petitioners' Federal income tax: *444 Additions
Taxable
to tax
Year
Deficiency
Sec. 6653 (a)
Clarence J. Thelen and Sue A.
1973
$ 2,113.43
0
Thelen (docket no. 1945-78)
1974
5,502.58
0
Clarence J. Thelen and Sue
1975
8,208.83
$ 410.44
Thelen (docket no. 11662-78)
1976
14,996.62
749.83
Clarence Thelen Family Estate
1973
2,000.07
0
(A Trust) Sue A Thelen, Trustee
1974
3,056.60
0
(docket no. 1978-78)
Clarence Thelen Family Estate,
1975
4,531.18
226.56
A Trust, Sue Thelen, Trustee
1976
5,976.13
298.81
(docket no. 11443-78)
Concessions having been made the issues for decision are (1) whether petitioners Clarence Thelen and Sue Thelen or the Clarence Thelen Family Estate, (A Trust), (Trust) is taxable on net farm income, capital gain income and other income earned during the years in issue; (2) in the alternative, if the income is taxable to the Trust, whether the Trust is an association taxable as a corporation under section 7701; and (3) whether any part of the underpayment of tax for the years 1975 and 1976, for either the individuals or the Trust, was due to negligence or intentional disregard of rules and regulations within the meaning of section *445 6653(a). FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners Clarence and Sue Thelen resided in Elkhorn, Wisconsin, at the time of filing their petitions herein. Petitioners timely filed joint Federal income tax returns for the taxable years 1973 through 1976 with the Internal Revenue Service Center, Kansas City, Missouri. The Clarence Thelen Family Estate, (A Trust), Sue A. Thelen, Trustee, the petitioner in docket nos. 1978-78 and 11443-78, had its principal office in Elkhorn, Wisconsin, at the time of filing its petitions herein. The Trust timely filed its Federal income tax returns for the taxable years 1973 through 1976 with the Internal Revenue Service Center, Kansas City, Missouri. On June 18, 1973, petitioner Clarence J. Thelen (hereinafter petitioner) executed a document entitled "Declaration of Trust of this Constitutional Trust." The document was executed by petitioner for the purpose of creating the Trust known as the Clarence J. Thelen Family Estate (A Trust). The declared purpose of the Trust was: * * * to accept rights, title and interest in real and personal properties conveyed by THE GRANTOR *446 CREATOR HEREOF. Included therein is the exclusive use of his lifetime services and ALL OF his EARNER REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that Clarence J. Thelen can maximize his lifetime efforts through the utilization of his Constitutional Rights; * * *. Petitioner's wife Sue A. Thelen (hereinafter Sue) and his son Daniel Thelen (hereinafter Daniel) were the initial trustees of the Trust. On April 1, 1974, Daniel was appointed as a trustee for a five year term. On June 18, 1973, petitioner and Sue were appointed trustees to hold office for the life of the Trust. Thereafter during the years herein there were no further changes in the trustees. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. On July 31, 1973, Sue executed documents to transfer all of her interest in real estate to petitioner. Petitioner executed other documents on August 1, 1973, for the purpose of conveying the farm real estate, farm equipment, dairy cattle and other real and personal property, including *447 household furnishings and life insurance policies to the Trust. In addition, petitioner executed a document to convey the exclusive use of his lifetime services and all of his currently earned remuneration accruing therefrom to the Trust. In exchange for the real and personal property, and the conveyance of petitioner's earned income, the Trust issued all of its 100 units of beneficial interest to petitioner on August 1, 1973. On this same date petitioner transferred 50 units to Sue and, thereafter, on April 1, 1974, petitioner and Sue made transfers so that each of their five children owned 10 units, the Trust 10 units and petitioner and Sue each owned 20 units. The rights of the owners of the units of beneficial interest were prescribed in the Declaration of Trust and the certificates of beneficial interest. The Declaration of Trust provides, in part, that "* * * Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to the Trust property, nor any undivided interest therein, nor in the management thereof; nor shall the death of the holder entitle his heirs or legal representatives to demand any partition or division of the property of *448 the Trust * * *." This document goes on to declare that "It is expressly declared that A Trust, and not a partnership, is hereby created; and that neither the Trustees, officers, or certificate holders, present or future, have or possess any beneficial interest in the property or assets of Said Trust * * *." The rights of the owners of the beneficial interest are also set forth in the Certificate of Beneficial Interest, which certificates provide that "Benefits hereby conveyed consist solely of the emoluments as distributed by the actions of the trustees and nothing more. * * *" The trustees were authorized, by the Declaration of Trust, "* * * to do anything any citizen may do in any state or country * * *." Further, "* * * Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such an act is within their power. * * *" Prior to and during the years herein petitioner actively operated a dairy farm as a sole proprietorship. Although petitioner's income from the farming operation was deposited in the Trust bank account, there was no other visual or substantive change in the operation of the sole proprietorship before or after *449 the formation of the Trust. On August 1, 1973, petitioner and Sue entered into an employment contract with the Trust which provided that petitioner would serve as the Executive Manager and Sue would serve as Executive Secretary, both to serve for the life of the Trust. The agreement further provided that "The Managers shall be entitled to remuneration for their services and shall from time to time submit statements for their consultant fees for an amount mutually agreed upon between the Managers and the Trustees, substantiated by the minutes of the Trust." During each of the years 1973 through 1976, the Trust paid personal expenses of petitioner and Sue, including housing, health care, and transportation. In addition the Trust paid petitioner and Sue consulting fees as follows: Year
Amount
1973
$ 1,700
1974
4,450
1975
4,000
1976
7,600
The consulting fees were based on the personal needs of petitioner and Sue and not based on the services performed. On its 1973 through 1976 Federal income tax returns the Trust reported the income petitioner earned from the farming operation. Also, the Trust reported capital gain income from the sale of farm capital *450 assets and a small amount of miscellaneous income earned by petitioner. In addition the Trust deducted for each of the years "administrative" expenses which consisted of petitioner's personal, living and family expenses and "consulting fees" paid by the Trust to petitioner and Sue. After the Trust was formed petitioner and Sue reported the consulting fees received from the Trust on their 1973 through 1976 Federal income tax returns. Respondent determined that all of the net income from the farm operation, the capital gain and the miscellaneous income reported by the Trust was income of petitioner, not the Trust. In the alternative, respondent determined that if the income and expenses are taxable to the Trust, then the Trust should be treated as an association taxable as a corporation pursuant to section 7701. For the years 1975 and 1976, respondent asserted the addition to petitioners' tax for negligence. Petitioners presented no evidence with regard to this issue and did not address the issue on brief. OPINION The first issue to consider is whether petitioner or the Trust is taxable on the various amounts of income earned during the years herein. Respondent's basic *451 position with regard to this issue is that the Trust established by petitioner is illusory and has no economic significance and should be disregarded for income tax purposes. In addition, respondent sets forth alternative arguments to support this position that the income reported by the Trust is properly taxable to petitioners. Since we fully agree with respondent's basic position, our opinion will be limited to this extent. Petitioners argue that they have a constitutional right to enter into a contract with the Trust for their services and to convey their property to the Trust. Further, they argue that since a valid trust was created the income earned from their services and property is properly taxable to the Trust. Petitioners recognize they performed their services in the same manner both before and after formation of the Trust, but maintain that the Trust had the right to engage petitioners as independent contractors and to vend their services to third parties. The petitioners also point out that since the farm assets were in fact transferred to the Trust the income from this source should be recognized as that of the Trust. Although it is clear that the income earned *452 by petitioner from the farming operation is taxable to him since he earned and maintained control over the income in spite of the formation of the Trust under the doctrine set forth in Lucas v. Earl,281 U.S. 111 (1930), the facts in this case compel us to go beyond this doctrine and to concur with respondent's determination that the Trust has no economic substance and, on this basis must be totally disregarded for income tax purposes. Markosian v. Commissioner,73 T.C. 1235 (1980). Based on the various documents executed by petitioners, the appearance of a trust was established. However, upon an examination of the Trust document and the actual operation of the Trust, it is without question that the Trust rests on a foundation of meaningless pieces of paper. As we said in Markosian v. Commissioner,supra at 1241, "When the form of the transaction has not, in fact, altered any cognizable economic relationships, we will look through that form and apply the tax law according to the substance of the transaction. Furman v. Commissioner,45 T.C. 360 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967). *453 " In the instant case we see no change in economic relationships. Under the circumstances in this case it was virtually impossible for petitioners to change the economic relationship between themselves and the other beneficiaries. Petitioners had no meaningful source of income other than the farm income which compelled the Trust to pay the majority of their personal expenses. But more important is the grant of absolute and complete discretion to petitioners as lifetime trustees by the Trust language "A Minute of Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such act is within their power." Such an unbridled power gives petitioners as trustees the same control over the property conveyed to the Trust as they enjoyed prior to the formation of the Trust. Accordingly, in spite of the Trust, there was no change in petitioners' economic position. In addition, we do not accept as an economic reality the assignment of petitioner's future services and income to the Trust solely in exchange for an indefinite payment for such services without assurance to petitioner of complete control of the future income to be earned by him. *454 In fact, there was no understanding concerning the payment of consulting fees for petitioner's or Sue's services. Instead petitioners were paid an amount based on their personal needs. Under these circumstances we cannot find that petitioners had a meaningful or enforceable employment contract with the Trust. Based on the facts herein, it is clear that the Trust had no independent economic significance during the years at issue and the Trust should be disregarded for income tax purposes. For other cases where we held that trust arrangements similar to the one herein were not effective to shift the incidence of taxation from the taxpayer to a trust, see Vercio v. Commissioner,73 T.C. 1246, 1253 (1980); Markosian v. Commissioner,supra;Wesenberg v. Commissioner,69 T.C. 1005, 1011 (1978); Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; Horvat v. Commissioner,T.C. Memo. 1977-104, affd. by unpublished order (7th Cir. June 7, 1978), cert. denied 440 U.S. 959 (1979); Taylor v. Commissioner,T.C. Memo. 1980-313; and Gran v. Commissioner,T.C. Memo. 1980-558. *455 The final issue is whether petitioner and Sue are subject to the additions to tax under section 6653(a) for the years 1975 and 1976 for negligence or intentional disregard of rules and regulations. Petitioners failed to introduce any evidence to explain their failure to report substantial amounts of income. Also, there is no evidence to show that they had good reason to believe that the Trust arrangement was something other than a flagrant tax avoidance scheme. Rather, we do find that both petitioners were intelligent and realized that substantial amounts of income taxes could not be avoided simply by assigning property to a trust and still continue to personally enjoy or control the income therefrom; or, if they were not aware of this fact, they would have consulted a person knowledgeable in tax law before entering into such a complex arrangement. On this basis we sustain respondent's determination that part of petitioners' underpayment of tax for 1975 and 1976 was due to negligence. To reflect the conclusions reached herein, Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Clarence Thelen Family Estate (A Trust) Sue A. Thelen, Trustee, docket no. 1978-78; Clarence Thelen Family Estate, A Trust, Sue Thelen, Trustee, docket no. 11443-78; Clarence J. Thelen and Sue Thelen, docket no. 11662-78.↩
2. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩
3. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩