BYRON G. PALMER AND ELINOR D. PALMER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Palmer v. Commissioner
Docket No. 2539-78.
United States Tax Court
T.C. Memo 1981-354; 1981 Tax Ct. Memo LEXIS 388; 42 T.C.M. (CCH) 350; T.C.M. (RIA) 81354; July 9, 1981
Joseph Weigel, for the petitioners. Wayne B. Henry and Nelson Shafer, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure.[1] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined deficiencies *389 in petitioners' 1973 and 1974 Federal income taxes in the amounts of $ 8,673.30 and $ 3,672.13, respectively. Concessions having been made, the issues for decision are (1) whether petitioners or the Byron G. Palmer Family Estate, A Trust, is taxable on compensation earned by petitioners during the years involved; (2) whether petitioners or the Byron G. Palmer Family Estate, A Trust, is entitled to report net farm losses incurred during the years involved; (3) whether net farm losses incurred during the years involved resulted from an activity engaged in for profit; (4) whether respondent properly increased the useful life of an implement building from 20 years to 30 years, and plumbing and electrical improvements from 10 years to 15 years. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners resided in Lake Geneva, Wisconsin, at the time of filing their petition herein. Petitioners timely filed joint Federal income tax returns for the taxable years 1973 and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. On August 31, 1973, petitioner Byron G. Palmer (hereinafter petitioner) executed a document *390 entitled "Declaration of Trust of this Pure Trust." The document was executed by petitioner for the purpose of creating a trust known as the Byron G. Palmer Family Estate, A Trust (hereinafter Trust). The declared purpose of the Trust was: "* * * to accept rights, title and interest in real and personal properties conveyed by THE CREATOR HEREOF AND GRANTOR HERETO. Included therein is the exclusive use of his lifetime services and ALL OF his EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever * * *." Petitioner's wife Elinor D. Palmer (hereinafter Elinor) and son Charles G. Palmer (hereinafter Charles) were the initial trustees of the Trust. On August 31, 1973, petitioner and Elinor were appointed lifetime trustees. Thereafter during the years herein there were no further changes in the trustees. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. Petitioners executed documents on August 31, 1973, for the purpose of conveying farm real and personal property to the Trust. Also, petitioner *391 conveyed the exclusive use of his lifetime services and all currently earned remuneration to the Trust. Although the Trust reported the salary Elinor earned as an employee of Palmer & Dunbar, Inc., there is no evidence in the record that she conveyed the use of her services to the Trust. In exchange for the real and personal property, and the conveyance of petitioner's earned income, the Trust issued 100 units of beneficial interest to petitioner on September 6, 1973. On this same date petitioner transferred 50 units to Elinor. After additional transfers by petitioner and Elinor on September 6, 1973, the units of beneficial interest were held as follows: Units
Byron G. Palmer
10
Elinor D. Palmer
10
Charles G. Palmer
50
Donald G. Palmer
10
Joseph E. Palmer
10
Jean A. Ewing
10
The rights of the owners of the beneficial interest as set forth in the certificate are that "Benefits hereby conveyed consist solely of the emoluments as distributed by the action of the trustees and nothing more." With respect to trustee powers, the Declaration of Trust provides "Trustees' may do anything any individual may legally do in any state or country, subject to *392 the restrictions herein noted." The Trust document does not materially restrict the actions of the trustees, but the document does provide "A Minute of Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such act is within their power." On September 6, 1973, petitioner and Elinor entered into an employment contract with the Trust which provided that petitioner would serve as the Executive Manager and Elinor would serve as Executive Secretary, both to serve for the life of the Trust. The agreement further provided that "The Managers shall be entitled to remuneration for their services and shall from time to time submit statements for their consultant Fees for an amount mutually agreed upon between the Managers and the Trustees, substantiated by the minutes of the Trust." During each of the years 1973 and 1974, the Trust paid personal expenses of petitioner and Elinor, including housing, transportation and health care. No consulting fees were paid petitioner or Elinor during 1973 or 1974. Since its creation, no additional personal or real property has been transferred to the Trust and no distributions have been made to *393 beneficiaries other than petitioner and Elinor. During the years involved herein, petitioners performed services as employees for Palmer & Dunbar, Inc., a farm implement dealer. All wages petitioners received for such services after the Trust was formed were deposited in the Trust bank account except for amounts needed for personal expenses which were deposited directly into their personal checking account. At all times herein petitioners were under the direct supervision of their employer and had complete control of the wages earned. During 1973, petitioners earned wages as employees in the amounts of $ 19,355, of which $ 5,122.08 was improperly reported by the Trust. During 1974, petitioners earned wages of $ 20,000, all of which was improperly reported by the Trust. Respondent does not dispute that farm losses were incurred in the amounts of $ 26,765.06 and $ 24,316.25, for the years 1973 and 1974, respectively. However, a farm loss deduction was not allowed to petitioner Byron G. Palmer, in spite of respondent's contention that the farm operation should be attributed to him, on the ground that his farming operation was not an activity engaged in for profit. Respondent *394 does admit, however, that the farm operation, which was a joint venture with Charles, constitutes an activity engaged in for profit as it pertains to Charles, but not as it pertains to petitioner Byron G. Palmer since his actual work on the farm was sporadic and incidental. The primary activities of petitioners during the years involved herein were that of full-time employees of Palmer & Dunbar, Inc. and the farming operation which involved a dairy herd of 75-80 head of milk cows, 165 head of beef livestock, and the production of corn, hay, and soybeans. Petitioner acquired his first farm of 80 acres from his mother in 1961, and shortly thereafter purchased an adjoining farm of 200 acres. Petitioner operated the farm as a sole proprietor until 1969 when his son, Charles, took over the day to day management. Petitioners and their son operated the farm by sharing the profit or loss on an equal basis. In addition each party had some separate farm income activities. Also, petitioner was required to furnish additional fertilizer needed to restore the fertility of the land and was required to acquire and maintain all farm buildings. Petitioner's contribution to the joint venture, *395 in addition to the farm real estate, was physical labor when needed, primarily at planting time, and joint management decisions with his son concerning the general present and future farm operation. During 1973 and 1974 petitioner's farm activities were engaged in for profit and farm losses were sustained by petitioner in the amounts of $ 26,765.06 and $ 24,316.25, respectively. During 1974 respondent reduced the depreciation allowed on a building and its component parts owned by the Reinhardt & Palmer partnership in the amount of $ 1,783.00. Petitioner held a 50 percent interest in the partnership. However, petitioners failed to introduce any evidence pertaining to this adjustment. In addition, respondent adjusted the useful life of a building owned by petitioner and leased to Palmer & Dunbar, Inc., from 20 years to 30 years, and increased the life on the electrical and plumbing components from 10 years to 15 years. The building was insulated and made of steel and its dimensions were 70' X 180'. The building was used for farm machinery sales, storing of farm equipment and repairing farm equipment. The building's useful life was 30 years and the electrical and plumbing *396 components each had a useful life of 15 years. OPINION The first issue to consider is whether petitioners or the Trust is taxable on the farm operation and the compensation earned during the years herein. Respondent's basic position with regard to this issue is that the Trust established by petitioner is illusory and has no economic significance and should be disregarded for income tax purposes. In addition, respondent sets forth alternative arguments to support his position that the income reported by the Trust is properly taxable to petitioners. Since we fully agree with respondent's primary position, our opinion will be limited to this extent. Petitioner argues that he has a constitutional right to enter into a contract with the Trust for his services and to convey his farm property to the Trust. Further, he argues that since a valid trust was created the income earned from his services and farm property is properly taxable to the Trust. Petitioner recognizes he performed his services for his employer and the farm operated in the same manner both before and after formation of the Trust, but maintains that the Trust had the right to engage petitioner as an independent *397 contractor and to vend his services to third parties. Although it is clear that the income earned by petitioner for his services for Palmer & Dunbar, Inc. is taxable to him since he earned and maintained control over the income in spite of the formation of the Trust under the doctrine set forth in Lucas v. Earl, 281 U.S. 111 (1930), (and the income earned by Elinor from Palmer & Dunbar, Inc. was never transferred to the Trust), the facts in this case compel us to go beyond this doctrine and to concur with respondent's determination that the Trust has no economic substance and, on this basis, must be totally disregarded for income tax purposes. Markosian v. Commissioner, 73 T.C. 1235 (1980). Based on the various documents executed by petitioner, the appearance of a trust was established. However, upon an examination of the Trust document and the actual operation of the Trust, there is no question that the Trust rests on a foundation of meaningless pieces of paper. As we said in Markosian v. Commissioner, supra at 1241, "When the form of the transaction has not, in fact, altered any cognizable economic relationships, we will *398 look through that form and apply the tax law according to the substance of the transaction. Furman v. Commissioner, 45 T.C. 360 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1976)." In the instant case we see no change in economic relationships. Under the circumstances in this case it was virtually impossible for petitioners to change the economic relationship between themselves and the other beneficiaries. Petitioners had no meaningful source of income other than from the wages from Palmer & Dunbar, Inc. which compelled the Trust to pay the majority of their personal expenses. Further, the fact that the assignment of the wages to the Trust was ignored whenever this income was needed for personal reasons illustrates that the Trust was not treated as a separate entity. But more important is the grant of absolute and complete discretion to petitioners as lifetime trustees by the Trust language "A Minute of Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such act is within their power." Such unbridled power gives petitioners as trustees the same control over the property conveyed to the Trust *399 as they enjoyed prior to the formation of the Trust. Accordingly, in spite of the Trust, there was no change in petitioners' economic position. In addition, we do not accept as an economic reality the assignment of petitioner's future services and income to the Trust solely in exchange for an indefinite payment for such services without assurance of complete control of the future income to be earned by petitioner. In fact, there was no understanding concerning the payment of consulting fees to either Elinor or petitioner for their services. Also, the fact that no designated fees were paid to petitioners by the Trust for their services during the years herein further reflects the frivolous nature of the assignment. Instead amounts were arbitrarily withheld from the Trust at petitioners' discretion to satisfy the personal needs of petitioner and Elinor. Under the circumstances, such as we have here, we cannot find that petitioner's assignment of his services and income was either meaningful or enforceable and we can only conclude that there was no change in the economic benefit of petitioner's wages by reason of the assignment of his services to the Trust. Based on the facts *400 herein, it is clear that the Trust had no independent economic significance during the years at issue and the Trust should be disregarded for income tax purposes. For other cases where we held that trust arrangements similar to the one in the instant case were not effective to shift the incidence of taxation from the taxpayer to a trust, see Vnuk v. Commissioner, 621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980); Markosian v. Commissioner, supra; Wesenberg v. Commissioner, 60 T.C. 1005, 1011 (1978); Gran v. Commissioner, T.C. Memo. 1980-558; Taylor v. Commissioner, T.C. Memo. 1980-313; and Horvat v. Commissioner, T.C. Memo. 1977-104, affd. by unpublished order (7th Cir., June 7, 1978), cert. denied 440 U.S. 959 (1979). The next issue is whether petitioner's farming operation was an activity engaged in for profit as defined in section 183. Respondent contends that the farming activity was an activity not engaged in for profit on the basis that petitioner had a full time position *401 with Palmer & Dunbar, Inc. and that neither petitioner spent very much time farming. The expenses of carrying on a trade or business are deductible under section 162 without the limitations imposed by section 183 where the individual's primary purpose and intention in engaging in the activity is to make a profit. Golanty v. Commissioner, 72 T.C. 411, 425 (1979), affd.     F.2d     (9th Cir. 1981); Allen v. Commissioner, 72 T.C. 28 (1979); also, see Nickerson v. Commissioner, T.C. Memo. 1981-321. Whether such intent is present must be determined on the basis of all the facts and circumstances. Section 1.183-2(a), Income Tax Regs.Golanty v. Commissioner, supra at 426. As pointed out by respondent, section 1.183-2(b), Income Tax Regs., lists a number of factors to consider in determining whether an activity is one engaged in for profit. Respondent relies on the facts of full-time employment with Palmer & Dunbar, Inc., sporadic and incidental work on the farm, and that petitioners' son Charles was the true farmer to reach his conclusion that petitioners' farm activity was not engaged in for profit. The *402 determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Section 1.183-2(a), Income Tax Regs. Based on the pertinent facts herein we conclude that petitioner Byron G. Palmer's farming activity was an activity engaged in for profit. The fact that petitioners did not participate in daily farm work as argued by respondent is not persuasive. It is not unusual in a joint venture for one party to provide capital and the other to provide services which is present in the instant case. This is not an arrangement where the farm is simply rented to the tenant for a stated sum, but a joint venture where the parties share the profits and losses on an equal basis. Respondent does not dispute that Charles' farm activity was engaged in for profit which appears to be incongruous with respondent's position that petitioners' activity was not an activity engaged in for profit. In any event, petitioner's history of farming over a long period of time, his direct involvement in making major managerial decisions in conjunction with Charles, his performance of substantial farm labor *403 when needed and his large financial investment are sufficient objective factors to conclude that petitioners did intend to make a profit from the farming activity. Also, the farm activity is substantial. During 1973 and 1974 petitioners' reported in excess of $ 73,000 of gross farm income. Further, it is a significant factor that of the total loss of approximately $ 51,000 for the 2 years that petitioners paid in excess of $ 30,000 in interest on indebtedness incurred to improve the farm through extensive tile work and improvement of farm buildings. Although petitioners incurred significant losses, their burden does not require them to prove that the expectation of a profit was reasonable, but only that it was bona fide. Jasionowski v. Commissioner, 66 T.C. 312, 321 (1976). We cannot reconcile the substantial expenditures made by petitioners for fertilizer and land improvements to increase production with the lack of a bona fide profit motive. Accordingly, we conclude that the farm activity carried on by petitioner and Charles was an activity engaged in for profit and the limitations of section 183 do not apply. The final issue for our determination is whether *404 respondent's adjustment to depreciation claimed on certain property should be sustained. Respondent extended the life on a building and its electrical and plumbing components of property held in the Reinhardt & Palmer partnership of which petitioner was a 50 percent partner. Since petitioners failed to introduce any evidence concerning this adjustment, respondent's determination must be sustained. Petitioners have the burden of proof to overcome respondent's determination. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Respondent's depreciation adjustment to petitioner's building being leased to the Palmer & Dunbar, Inc. farm implement business must also be sustained on the basis that petitioners have failed to overcome their burden of proof. The only evidence submitted at trial was petitioner's testimony that he had used a 20 year life on the building which he felt was fair because of the manner in which the building was being used. Petitioner's testimony was too general and vague to have any probative value and is not sufficient to overturn the presumption of correctness of respondent's determination. *405 To reflect the conclusions reached herein, Decision will be entered under Rule 155. Footnotes
1. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩