ROBERT C. CHASE AND RUTH L. CHASE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chase v. Commissioner
Docket No. 15751-88
United States Tax Court
T.C. Memo 1990-164; 1990 Tax Ct. Memo LEXIS 185; 59 T.C.M. (CCH) 261; T.C.M. (RIA) 90164; Unemployment Ins. Rep. (CCH) P15,330; March 28, 1990
John E. Mack, for the petitioners. Ellen T. Friberg, for the respondent. DINAN
MEMORANDUM FINDINGS OF FACT AND OPINION DINAN, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue of Code of 1986 and Rules 180, 181 and 182. [1]
Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1984 of $ 3,442 and additions to tax of $ 172 under section 6653(a)(1) and an amount to be determined under section 6653(a)(2). The first issue for decision is whether certain business trusts set up by petitioners should be disregarded for the purpose of determining whether *187 petitioner Robert Chase had earnings from self-employment, thereby subjecting him to the self-employment tax under section 1401. If the answer to the first issue is in the affirmative, then we must decide whether petitioners are liable for additions to tax for negligence or disregard for rules and regulations under sections 6653(a)(1) and (a)(2). Some of the facts have been stipulated. The stipulations of fact and accompanying exhibits are incorporated by this reference. Petitioners resided in Mandan, North Dakota, at the time they filed their petition herein. FINDINGS OF FACT Prior to 1983, petitioner Robert C. Chase (hereinafter petitioner) held an interest in two partnerships in which he was actively involved. The first partnership was Midstate Leasing Company. Petitioner had a 50-percent interest in the partnership, as did his brother Monroe Chase. The partnership was formed to manage and lease out an airplane hangar and an aircraft repair building. The second partnership was B & K Salvage Company. Petitioner had a 50-percent interest in this partnership and his son Keith Chase owned the remaining 50-percent interest. This partnership was in the business of purchasing *188 damaged aircraft, salvaging the parts, rebuilding them, and then reselling them to other shops. Both petitioner and his son were active in running this business but petitioner did the majority of the work. The partnership had no employees. Petitioner was also involved in a corporation whose business was operating an aircraft maintenance facility. The name of this corporation was Mandan Air Service. Petitioner's involvement in this enterprise is not in issue in this case. In 1983, petitioner purported to change the form of the two businesses in issue from partnerships to business trusts. In addition, he started up a new business which he also purported to form as a business trust. The new business was referred to as the Aerial Crop Care Company which was involved in aerial spraying. Petitioner and his son Keith formed this business and operated it although it was Keith who did the majority of the work. This business had no employees either. Petitioner set up these business trusts based upon consultation with and the advice of an attorney and an accountant. It appears that the place of business for all of the enterprises was the Mandan Municipal Airport located in Mandan, *189 North Dakota. Since the business trusts involved in this case are all similar in structure, we will describe their formation and structure in the aggregate. The first step was to set up the trust. Parnell and Armageddon, both nonprofit corporations formed under the laws of South Dakota, would, as trustees, form a trust using an instrument referred to as a Declaration of Trust. The trust was to be an unincorporated common law trust or Massachusetts Trust. The trustees were to file the Declaration of Trust with the Minnesota Secretary of State under section 318.01 et seq. of the Minnesota Code. The beneficial interests in the trust were to be evidenced by trust certificates. The certificates would enable the holder to participate proportionately in all dividends and other distributions of income or principal from the trust at the discretion of the trustees. Upon the termination of the trust the trustees were to distribute all property, income, and accrued interest in the trust to the certificate holders. During the life of the trust, the certificate holders had no right to trust property, only to their proportionate share of dividends and distributions as actually paid out. *190 The business and property of the trust were to be managed by the Board of Trustees, who were the persons named in the Declaration of Trust (Parnell and Armageddon). The trustees were to hold the trust property in the trust name and were to have absolute and exclusive power and control over the management and conduct of the business free from any right of control of any of the certificate holders. The trustees were to maintain books, accounts and records and preserve accurate minutes of all meetings and record all decisions pertaining to the trust. The trust was to remain in existence for 25 years. The trustees, Parnell and Armageddon, created four Declarations of Trust for petitioner and filed them with the Minnesota Secretary of State. The first, North Star Company, was created on September 11, 1981 and filed with the Secretary of State on December 28, 1981. The second, Abacaxi Company, was created on August 20, 1981, and filed with the Secretary of State on August 24, 1981. The third and fourth, Aerial Crop Care Company and B & K Salvage Company, respectively, were both created on April 25, 1983. The Declaration of Trust for B & K Salvage Company was filed with the Secretary *191 of State on May 16, 1983, and the Declaration of Trust for Aerial Crop Care Company was filed with the Secretary of State in May of 1983. All four Declarations of Trust were signed by two trustees: Cheryl A. Foshaug as President of Armageddon and by Marti Inman as President of Parnell. Cheryl A. Foshaug, who was held out to be an incorporator, director, and officer of Armageddon, was in reality neither a director nor officer of Armageddon nor did she perform any duties for any of the four trusts. Many of the documents she signed were merely single sheets of paper containing only a signature block for her signature. Marti Inman was the president of Parnell. She was not a director. Her sole job duty was to sign her name to papers. The papers were often blank except for her signature line. She did not perform any duties for any of the four trusts. On January 21, 1983, the airplane hangar and aircraft repair building were conveyed from Midstate Leasing Company to the North Star Company. Petitioner and his wife were certificate holders in the North Star Company business trust but petitioner's brother, who had been a partner in Midstate Leasing Company, was not a certificate *192 holder in the business trust. There were two certificate holders each in the B & K Salvage Company and Aerial Crop Care Company business trusts. The first, another business trust, Abacaxi, was a 50-percent-certificate holder in each and the second, petitioner's son, was the remaining 50-percent-certificate holder in each. Petitioner and his wife, petitioner Ruth Chase, were in turn each 50-percent-certificate holders in Abacaxi. As previously found, the business for which Aerial Crop Care Company was formed came into existence in 1983, but the business for which B & K Salvage Company was formed had been in existence prior to 1983 in the partnership form. Keith Chase was at all relevant times the managing director of B & K Salvage Company. Petitioner was managing director of Aerial Crop Care Company in 1983 and Keith Chase was managing director of Aerial Crop Care Company thereafter. Petitioner was managing director of North Star Company at all times relevant hereto. Petitioner's daughter was managing director of Abacaxi at all times relevant hereto. Petitioner and his son Keith managed and operated the businesses themselves after the creation of the trusts in the same *193 manner as they had prior to the creation of the trusts. Petitioner testified at trial that he formed these business trusts to protect his business assets from his personal creditors. He further testified that he did not have any particular tax motive in mind when he formed these business trusts. Neither petitioner nor his son drew a salary or any other form of wages from either B & K Salvage Company or Aerial Crop Care Company. They received remuneration for their services from those two businesses in the form of distributions from the business trusts. Petitioner's share of the distributions was reported as Schedule E income on petitioners' Federal income tax return as described below. Petitioner did not claim the distributions as self-employment income on his return. The business trusts all filed Form 1041, U.S. Fiduciary Income Tax Returns, for the taxable year in issue. The North Star Company, the business trust which purportedly owned the aircraft hangar and aircraft repair building, reported net rents of $ 13,169 for the taxable year in issue. This same amount was reported on Schedule E of petitioners' Federal income tax return. On Abacaxi Company's Schedule K-1 *194 for the Aerial Crop Care Company (it held a 50-percent interest in the company) it was reported that Abacaxi's share of taxable income was $ 7,512.50. On Abacaxi Company's Schedule K-1 for the B & K Salvage Company (it similarly held a 50-percent interest in that company) it was reported that Abacaxi's share of taxable income was $ 15,770. The total of these two amounts ($ 23,283) was reported on petitioners' Schedules K-1 for the Abacaxi Company and then on Schedule E of petitioners' Federal income tax return. OPINION Respondent, in his statutory notice of deficiency, determined that the creation of the business trusts were sham transactions not recognizable for Federal tax purposes. Respondent then reclassified the Schedule E income from the North Star Company (the rental property) as rental income and the Schedule E income from Abacaxi Company (which in turn was income from B & K Salvage Company and Aerial Crop Care Company) as net earnings from self-employment subject to the self-employment tax. The determination of respondent is presumed correct. Petitioners bear the burden of *195 proving that respondent erred in his determination. Rule 142(a). The first issue we must decide is whether the business trusts should be disregarded for purposes of determining whether petitioner had self-employment earnings from B & K Salvage Company and Aerial Crop Care Company. Section 1401 imposes a tax upon the self-employment income of every resident individual. Section 1401(a); section 1.1401-1(a), Income Tax Regs. It is imposed in addition to other taxes but is levied, assessed, and collected as part of the income tax. Section 1.1401-1(a), Income Tax Regs. Self-employment income is defined as the net earnings from self-employment derived by an individual less wages paid to such individual as an employee but not in excess of the Social Security taxable wage base. Section 1402(b); section 1.1402(b)-1(a), Income Tax Regs. Net earnings from self-employment may be defined as gross income less allowable deductions derived by an individual from any trade or business carried on by that individual, *196 and his distributive share of partnership income; but does not include, among other things, rentals from real estate, dividends from stock, interest on a note, or gain or loss on the exchange of a capital asset. Section 1402(a); section 1.1402(a)-1(a), Income Tax Regs. Furthermore, income derived from a trade or business carried on by an estate or trust does not constitute net earnings from self-employment of the beneficiaries. Section 1.1402(a)-2(b), Income Tax Regs.
The issue of whether petitioner is liable for a self-employment tax in this case turns, then, on whether the income from B & K Salvage Company and Aerial Crop Care Company was derived from a trade or business carried on by petitioner individually or through a partnership or whether it was carried on by the business trusts as separate jural entities. In deciding this we will look to the true substance of the transaction and will not be restricted by its form. Gregory v. Helvering, 293 U.S. 465 (1935). Furthermore, while it is settled law that a *197 taxpayer may reduce his taxes by any means the law allows, Gregory v. Helvering, supra at 469, that right does not allow the taxpayer to construct paper entities to avoid taxation when those entities are without economic substance. Zmuda v. Commissioner, 79 T.C. 714, 719 (1982), affd. 731 F.2d 1417 (9th Cir. 1984). This rule applies even if the entity has a separate existence recognized under state law. Zmuda v. Commissioner, supra at 720, citing Furman v. Commissioner, 45 T.C. 360 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967). In the instant case, petitioner and his son carried on the two businesses as informal, two-man, general partnerships both before and after they were transferred to the trusts. They performed all the tasks needed to carry on the businesses and split the profits between them. The business trusts were in reality never implemented. They were mere paper entities formed to evade the self-employment tax. The trustees, who were supposed to manage the businesses, were straw men. They performed no tasks whatsoever towards managing the businesses and *198 fulfilled none of the responsibilities set out in the Declarations of Trust. They were present in name only. The only duties of the presidents of the nonprofit corporations, as trustees, were to sign blank pieces of paper which were later attached to the Declarations of Trust. Nothing changed after the creation of the business trusts other than the fact that petitioners had in their possession four documents entitled Declaration of Trust. Consequently, for the foregoing reasons, we find that the business trusts are mere paper entities wholly without economic substance and will not be respected for tax purposes. Accordingly, petitioner is liable for the self-employment tax on his share of the income derived from both B & K Salvage Company and Aerial Crop Care Company. The determination of respondent on this issue is sustained. The next and last issue presented for decision is whether petitioners are liable for additions to tax for negligence or disregard of rules and regulations under sections 6653(a)(1) and (a)(2). Negligence, for purposes of section 6653, may be defined as the lack *199 of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934 (1985). Petitioner set up these business trusts with the advice of professionals for the alleged purpose of protecting business assets from personal creditors. While at first blush it may appear that petitioner was a victim of bad advice, a closer inspection reveals that he had to have known that this was not a legitimate transaction. The Declarations of Trust vest the management of petitioner's businesses in the trustees. Yet they took no part in managing or operating the businesses. Petitioner should have questioned the fact that someone else was supposed to manage his businesses when they were noticeably absent. A reasonable person, when confronted with this situation, would have undertaken a closer inspection of what was transpiring. Petitioner did not. We therefore find he was negligent. The determination of respondent is sustained on this issue. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All subsequent section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩