T.C. Memo. 2001-173

UNITED STATES TAX COURT

RICHARD R. PELHAM AND PAULA A. PELHAM, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RRP TRUST, RICHARD R. PELHAM, TRUSTEE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 18687-99, 18688-99.        Filed July 12, 2001.

W. McNab Miller III, for petitioners.

W. Lance Stodghill, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined deficiencies in
petitioners' Federal income taxes and accuracy-related penalties
under section 6662(a) as follows:

Richard R. and Paula A. Pelham
Docket No. 18687-99

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1996 | $4,761 | $952 |
| 1997 | 11,050 | 2,210 |

RRP Trust, Richard R. Pelham, Trustee
Docket No. 18688-99

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1996 | $12,297 | $2,459 |
| 1997 | 36,558 | 7,312 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by the parties, the issue remaining for decision is whether petitioner RRP Trust (the trust) should be disregarded for Federal income tax purposes and the income and expense from the business operations of Lake Lock & Key attributed to petitioners Richard R. Pelham and Paula A. Pelham (the Pelhams).

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.

Richard R. Pelham (Richard Pelham) and Paula A. Pelham (Paula Pelham), husband and wife, resided in Humble, Texas, at

the time they filed their petition.  The principal address of the trust was Humble, Texas, at the time of filing its petition.

Prior to the establishment of the trust, Richard Pelham owned and operated Lake Lock & Key as a sole proprietorship.  Lake Lock & Key was engaged in the sale, repair, and maintenance of locks and keys for homes and motor vehicles, including selling locks and keys, installing and repairing locks for homes and motor vehicles, opening and repairing broken locks and those with missing keys, and making replacement keys.  As a sole proprietorship, all of the equipment was owned or provided by Richard Pelham individually.

The trust was established upon the suggestion of the Pelhams' accountant.  The Pelhams then consulted with a tax attorney, to whom they paid $2,495 to draft the trust document.  Edwina Hamilton (Hamilton), the adult daughter of the Pelhams, was involved in the trust arrangement and, on October 1, 1996, Hamilton, as donor, and Richard Pelham, as trustee, executed the trust agreement.  The trust designated Richard Pelham as both the trustee and beneficiary of the trust.  Paula Pelham was named as the successor trustee.  Under the terms of the trust, the beneficiary, while serving as trustee, had the power to appoint cotrustees and successor trustees.

The trust was initially funded with $1 from Hamilton and, upon the request of Richard Pelham, Hamilton wrote a check for

$700 dated December 13, 1996, that was deposited into the trust bank account. The trust agreement provided that any other person could add property acceptable to the trustee.

Richard Pelham operated the lock and key business under the assumed name "Lake Lock & Key" until November 14, 1996, when he filed a Withdrawal Notice of Assumed Name certificate, stating that the trust would be conducting business under the name "Lake Lock & Key".

The operations of the lock and key business did not change after the business was transferred to the trust. As trustee, Richard Pelham performed the same duties for Lake Lock & Key that he performed before the creation of the trust. Lake Lock & Key used the same work order invoices. Lake Lock & Key used the same taxpayer identification number for the filing of sales tax returns to the State of Texas and for the filing of State unemployment tax returns both before and after Richard Pelham began operating the business through the trust.

Richard Pelham worked for Lake Lock & Key both before and after the establishment of the trust. After the establishment of the trust, Richard Pelham, both individually and as trustee, entered into a signed Employment Contract dated October 1, 1996. In that contract, Richard Pelham agreed to provide his services as a "chief residential and commercial lock and key service technician" in exchange for a salary of $30,000 annually.

Richard Pelham received a Form W-2, Wage and Tax Statement, for 1996 from the trust in the amount of $7,500 and for 1997 from the trust in the amount of $15,000.

The ownership of the business bank account was transferred from Richard Pelham, individually, to the trust in December 1996. Richard Pelham paid personal expenses out of the trust bank account.

The Pelhams reported the income and expenses of Lake Lock & Key from January 1 to October 19, 1996, on Schedule C, Profit or Loss From Business, of their jointly filed Form 1040, U.S. Individual Income Tax Return. Subsequent to October 19, 1996, the trust reported the income and expenses of Lake Lock & Key on Schedule C of its Form 1041, U.S. Income Tax Return for Estates and Trusts. The trust reported no taxable income in either 1996 or 1997 because its net income from the lock and key business operations was deducted as an income distribution deduction and reported as such on a Schedule K-1, Beneficiary's Share of Income, Deductions, Credits, etc., to Richard Pelham as the beneficiary. Richard Pelham reported the income distribution from the trust on Schedule E, Supplemental Income and Loss, Part III, Income or Loss From Estate and Trusts, of the Pelhams' jointly filed Federal individual income tax return.

Richard Pelham owned the equipment used in the lock and key business. Lease payments in the amount of $2,875 per year were

reported as income by the Pelhams on Schedule C of their jointly filed 1997 Form 1040 and were claimed as an expense on the trust's Schedule C of its 1997 Form 1041. No lease agreement was executed. No payments were made by the trust to Richard Pelham for use of the equipment, but the trust did make the payments on the truck owned by Richard Pelham. The handling of the equipment lease transaction and of reporting for tax purposes was done by the Pelhams' tax preparer.

## OPINION

Respondent's position is that the trust lacks economic substance and should be disregarded for Federal income tax purposes. Respondent maintains that Richard Pelham created a mere paper entity, the trust, and transferred the business operations of his sole proprietorship, Lake Lock & Key, to the trust for the purpose of avoiding self-employment tax under section 1402.

Petitioners argue that the trust should be treated as a separate entity because: (1) The trust is a valid trust under State law; (2) a business may lawfully change from one form of entity to another, provided that the legal requirements are met; and (3) the trustee of the trust may operate a sole proprietorship business within the trust entity. Petitioners claim that the income and expenses of Lake Lock & Key were properly reported for Federal income tax purposes, because the

net income from the trust was reported as an income distribution on a Schedule K-1 to Richard Pelham and accordingly was reflected on the Pelhams' Schedule E of their jointly filed Federal individual income tax return.

Taxpayers are entitled to structure their transactions to minimize their tax obligations. Gregory v. Helvering, 293 U.S. 465, 469 (1935). However, transactions that have no significant purpose other than to avoid tax and that do not reflect economic reality will not be recognized for Federal income tax purposes. Zmuda v. Commissioner, 79 T.C. 714, 719 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Markosian v. Comissioner, 73 T.C. 1235, 1245 (1980); see also Furman v. Commissioner, 45 T.C. 360, 364-366 (1966), affd. 381 F.2d 22 (5th Cir. 1967). Where the form of a transaction has not altered any cognizable economic relationships, we look through the form of the transaction and apply the tax law according to the transaction's substance. Markosian v. Commissioner, supra at 1241. This principle applies regardless of whether the transaction creates an entity with separate existence under State law. Zmuda v. Commissioner, supra at 720; see also Furman v. Commissioner, supra at 364.

In deciding whether a purported trust lacks economic substance, we consider the following factors: (1) Whether the taxpayer's relationship, as grantor, to property purportedly transferred into trust differed materially before and after the

trust's formation; (2) whether the trust had a bona fide independent trustee; (3) whether an economic interest in the trust passed to trust beneficiaries other than the grantor; and (4) whether the taxpayer honored restrictions imposed by the trust or by the law of trusts. See Markosian v. Commissioner, supra at 1243-1245.

Respondent argues that Richard Pelham was effectively the grantor of the trust because he arranged and paid for the establishment of the trust and effectively transferred his locksmith business to the trust. Respondent relies on Zmuda v. Commissioner, supra at 720, and does not rely on the grantor trust provisions under sections 671 to 678. Petitioners assert that Hamilton was the settlor of the trust because she is named as the donor in the trust document and she funded the trust with $701. Richard Pelham claims that he did not transfer assets, not even personal assets, to the trust, because he leased the business equipment to the trust. However, Richard Pelham testified that he had not signed the purported lease, and no payments were made by the trust to him for use of the equipment. Rather, the trust made the payments on the truck owned by Richard Pelham.

"In determining the settlors of a trust, we look beyond the named grantors to the economic realities to determine the true grantor." Id. Hamilton was a straw man who acted only in form

as the grantor of the trust. Hamilton's involvement was a mere formality; she signed the trust document and funded the trust with a nominal amount. Considering the economic realities, the true grantor of the trust was Richard Pelham. Richard Pelham, upon the advice of his tax preparer, consulted with an attorney who drafted the trust documents, and Richard Pelham paid $2,495 for the trust package and asked his daughter to write a check for $700 to the trust. Richard Pelham also transferred intangible assets to the trust, such as the business name and the ongoing business operations of Lake Lock & Key.

The business was operated in substantially the same manner both before and after the trust was created. The business and its activities continued under the same name, used the same work order invoices, used the same taxpayer identification number for filing its State unemployment tax return and sales tax return with the State of Texas, and used the same business equipment. After the establishment of the trust, Richard Pelham continued to manage and work for the business.

The trust did not have an independent trustee. Richard Pelham had control over the trust activities and trust assets. Richard Pelham was named as the sole trustee of the trust, and he had exclusive control over the trust and the business operations. Richard Pelham paid the personal expenses of the Pelhams from the trust bank account. Additionally, Paula Pelham was named as

successor trustee. Under the terms of the trust, the trustee had the power to appoint successor trustees and cotrustees.

Petitioners assert that the personal expenses that were paid from the trust bank account were accounted for as a distribution and that only the legitimate business expenses were deducted. Even so, Richard Pelham had the ability to control fully the trust's activities and trust assets for his own benefit because no independent trustee had any meaningful control over the management of the trust.

No one other than Richard Pelham held any meaningful economic interest in the trust because, under the terms of the trust agreement, Richard Pelham was the named beneficiary of the income and principal of the trust.

Petitioners argue that Richard Pelham achieved benefits from operating the sole proprietorship within a trust and not forming a corporation because: (1) The trust could avoid the State franchise tax imposed on the profits of a corporation, which would have been approximately $2,040; (2) the trust would not have to pay the State incorporation filing fee of $300; and (3) the trust did not have to maintain corporate formalities, such as shareholder minutes.

Petitioners' argument that a trust had advantages over a corporation misses the point. The incorporation alternative is not an issue here. Petitioners chose the form of a trust and are

responsible for the consequences of their decision. Those consequences are not the same as corporate form. The U.S. Supreme Court has observed repeatedly: "while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, * * * and may not enjoy the benefit of some other route he might have chosen to follow but did not." Commissioner v. Natl. Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974) (citations omitted).

Richard Pelham testified at trial about his decision to use a trust entity to operate his sole proprietorship:

> Q    And how was it decided that you wanted to start operating Lake Lock & Key through the trust?
>
> A    Just for the retirement reason.
>
> Q    Which retirement reason are we talking about?
>
> A    About saving that money for ten years, and letting it build up.  And the life insurance policy.  Otherwise, I'm--maybe tax reasons, I guess.  Because I was--I just turned--I went on Social Security, and I was allowed to make like $8,000 a month.
>
>      That's what I understood.  That I wouldn't have to pay, like--I'd have to pay taxes on income from the business, but not Social Security after $8,000.
>
>           *     *     *     *     *     *     *
>
> Q    Mr. Pelham, if everything stayed the same, what was the purpose of forming the trust?
>
> A    My retirement money that I had to invest every month.  And to my knowledge, not--just being a layman on the tax part, only paying tax on the income, and not Social Security.

Like for instance, if I made, let's say 40,000 in a year, I only had to pay Social Security on that 8,000 that I paid myself. But let's say the other balance of the 32,000, I had to pay income tax on, but not Social Security tax. That was my understanding.

I guess what you'd say is for tax reasons.

Based on Richard Pelham's testimony and the totality of the evidence, we conclude that the primary purpose of establishing the trust was to avoid employment tax. The trust lacked independent economic substance. Richard Pelham was, in substance, the grantor of the trust. Thus, the income and expenses from the operations of Lake Lock & Key during the years in issue are attributable to the Pelhams and not to the trust. The Pelhams are liable for self-employment taxes on the net income of Lake Lock & Key for the years in issue.

To reflect the foregoing and concessions of the parties,

Decisions will be entered

under Rule 155.