T.C. Memo. 2001-172


UNITED STATES TAX COURT


CIM TRUST, CHARLOTTE MORROW, TRUSTEE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

PETER AND CHARLOTTE I. MORROW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 18689-99, 18690-99.          Filed July 12, 2001.


<u>W. McNab Miller III</u>, for petitioners.

<u>W. Lance Stodghill</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income taxes and accuracy-related penalties under section 6662(a) as follows:

CIM Trust, Charlotte Morrow, Trustee
Docket No. 18689-99

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1996 | $5,713 | $1,143 |
| 1997 | 28,128 | 5,626 |

Peter and Charlotte I. Morrow
Docket No. 18690-99

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1996 | $3,118 | $624 |
| 1997 | 6,379 | 1,276 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  After concessions by the parties, the issue remaining for decision is whether petitioner CIM Trust (the trust) should be disregarded for Federal income tax purposes and the income and expense from the business operations of I.D.F. Pest Control Co. attributed to petitioners Peter Morrow and Charlotte I. Morrow (the Morrows).

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.

Peter Morrow and Charlotte I. Morrow (Charlotte Morrow), husband and wife, resided in Humble, Texas, at the time they

filed their petition. The principal address of the trust was Humble, Texas, at the time of filing its petition.

Prior to the establishment of the trust, Charlotte Morrow owned and operated I.D.F. Pest Control Co. as a sole proprietorship. I.D.F. Pest Control Co. was engaged in the business of pest control for residential and commercial buildings, including determining the type and nature of pest infestation, the extent of structural damage, and the means to be used to control or eliminate the pest. As a sole proprietorship, all of the equipment was owned or provided by the Morrows individually.

The trust was established after the Morrows sought the advice of their tax preparer, who suggested operating the business either as a trust or as an S corporation. The Morrows then consulted with a tax attorney, to whom they paid $2,495 to draft the trust document. The Morrows asked their adult daughter, Starlesta Kimmey (Kimmey), to become involved in the trust arrangement, and, on October 1, 1996, Kimmey, as donor, and Charlotte Morrow, as trustee, executed the trust agreement. The trust designated Charlotte Morrow as both the trustee and beneficiary of the trust. Peter Morrow was named as the successor trustee and successor beneficiary of the trust upon the death of Charlotte Morrow. Under the terms of the trust, the

beneficiary, while serving as trustee, had the power to appoint cotrustees and successor trustees.

The trust was initially funded with $1 from Kimmey and a check from Kimmey, dated October 1, 1996, for $1,000 that was later deposited into the trust bank account. The trust agreement provided that any other person could add property acceptable to the trustee.

Charlotte Morrow operated the pest control business under the assumed name "I.D.F. Pest Control Co." until December 13, 1996, when she filed an Assumed Business Name Certificate, stating that the trust would be conducting business under the name "I.D.F. Pest Control Co.".

The operations of the pest control business did not change after the business was transferred to the trust. As trustee, Charlotte Morrow performed the same duties for I.D.F. Pest Control Co. that she performed before the creation of the trust. I.D.F. Pest Control Co. also used the same service contracts and same invoices.

Peter Morrow worked for I.D.F. Pest Control Co. as an employee both before and after the establishment of the trust. After the establishment of the trust, Peter Morrow, individually, and Charlotte Morrow, as trustee, entered into a signed Employment Contract dated October 1, 1996. In that contract, Peter Morrow agreed to provide his services as a pest control

manager in exchange for a salary of $25,000 annually. Peter Morrow received a Form W-2, Wage and Tax Statement, for 1996 from the trust in the amount of $3,000 and for 1997 from the trust in the amount of $25,000.

The ownership of the business bank account was transferred from Charlotte Morrow, individually, to the trust in December 1996. Both Peter Morrow and Charlotte Morrow had signature authority over the trust bank account. Peter Morrow paid personal expenses out of the trust bank account.

The Morrows did not apply for insurance in the name of the trust. The commercial general liability insurance policy was written to Charlotte Morrow d.b.a. I.D.F. Pest Control Co. for the policy period beginning June 20, 1997. On the business automobile insurance policy, the name of the insured was listed as Charlotte Morrow d.b.a. I.D.F. Pest Control Co. for the policy period beginning July 31, 1997.

The Morrows continued to use the same Texas Structural Pest Control business license that allowed them to operate a pest control business. The Texas Sales and Use Tax Returns listed Charlotte Morrow as the taxpayer, with Charlotte Morrow's Social Security number as the taxpayer identification number, and listed I.D.F. Pest Control Co. as the business both before and after the Morrows began operating the business through the trust.

The Morrows reported the income and expenses of I.D.F. Pest Control Co. from January 1 to September 30, 1996, on Schedule C, Profit or Loss From Business, of their jointly filed Form 1040, U.S. Individual Income Tax Return. Subsequent to October 1, 1996, the trust reported the income and expenses of I.D.F. Pest Control Co. on Schedule C of its Form 1041, U.S. Income Tax Return for Estates and Trusts. The trust reported no taxable income in either 1996 or 1997 because its net income from the pest control business operations was deducted as an income distribution deduction and reported as such on a Schedule K-1, Beneficiary's Share of Income, Deductions, Credits, etc., to Charlotte Morrow as the beneficiary. Charlotte Morrow reported the income distribution from the trust on Schedule E, Supplemental Income and Loss, Part III, Income or Loss From Estate and Trusts, of the Morrows' jointly filed Federal individual income tax return.

Peter Morrow owned the equipment used in the pest control business. Lease payments in the amount of $8,600 per year were reported as income by the Morrows on Schedule C of their jointly filed 1997 Form 1040 and were claimed as an expense on the trust's Schedule C of its 1997 Form 1041. No lease agreement was executed. No payments were made by the trust to Peter Morrow for use of the equipment. The handling of the equipment lease

transaction and of reporting for tax purposes was done by the Morrows' tax preparer.

## OPINION

Respondent's position is that the trust lacks economic substance and should be disregarded for Federal income tax purposes. Respondent maintains that the Morrows created a mere paper entity, the trust, and transferred the business operations of their sole proprietorship, I.D.F. Pest Control Co., to the trust for the purpose of avoiding self-employment tax under section 1402.

Petitioners argue that the trust should be treated as a separate entity because: (1) The trust is a valid trust under State law; (2) a business may lawfully change from one form of entity to another, provided that the legal requirements are met; and (3) the trustee of the trust may operate a sole proprietorship business within the trust entity. Petitioners claim that the income and expenses of I.D.F. Pest Control Co. were properly reported for Federal income tax purposes, because the net income from the trust was reported as an income distribution on a Schedule K-1 to Charlotte Morrow and accordingly was reflected on the Morrows' Schedule E of their jointly filed Federal individual income tax return.

Taxpayers are entitled to structure their transactions to minimize their tax obligations. Gregory v. Helvering, 293 U.S.

465, 469 (1935).  However, transactions that have no significant purpose other than to avoid tax and that do not reflect economic reality will not be recognized for Federal income tax purposes. Zmuda v. Commissioner, 79 T.C. 714, 719 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Markosian v. Comissioner, 73 T.C. 1235, 1245 (1980); see also Furman v. Commissioner, 45 T.C. 360, 364-366 (1966), affd. 381 F.2d 22 (5th Cir. 1967).  Where the form of a transaction has not altered any cognizable economic relationships, we look through the form of the transaction and apply the tax law according to the transaction's substance. Markosian v. Commissioner, supra at 1241.  This principle applies regardless of whether the transaction creates an entity with separate existence under State law.  Zmuda v. Commissioner, supra at 720; see also Furman v. Commissioner, supra at 364.

In deciding whether a purported trust lacks economic substance, we consider the following factors:  (1) Whether the taxpayer's relationship, as grantor, to property purportedly transferred into trust differed materially before and after the trust's formation; (2) whether the trust had a bona fide independent trustee; (3) whether an economic interest in the trust passed to trust beneficiaries other than the grantor; and (4) whether the taxpayer honored restrictions imposed by the trust or by the law of trusts.  See Markosian v. Commissioner, supra at 1243-1245.

Respondent argues that the Morrows were effectively the grantors of the trust because they arranged and paid for the establishment of the trust and effectively transferred their pest control business to the trust. Respondent relies on Zmuda v. Commissioner, supra at 720, and does not rely on the grantor trust provisions under sections 671 to 678. Petitioners assert that Kimmey was the settlor of the trust because she is named as the donor in the trust document and she funded the trust with $1,001. The Morrows claim that they did not transfer assets, not even personal assets, to the trust, because the Morrows leased the business equipment to the trust. However, Peter Morrow testified that he had not signed or even seen the purported lease, and no payments were made by the trust to him for use of the equipment.

"In determining the settlors of a trust, we look beyond the named grantors to the economic realities to determine the true grantor." Id. Kimmey was a straw man who acted only in form as the grantor of the trust. Kimmey's involvement was a mere formality; she signed the trust document and funded the trust with a nominal amount. Considering the economic realities, the true grantors of the trust are the Morrows. The Morrows, upon the advice of their tax preparer, consulted with an attorney who drafted the trust documents; the Morrows paid $2,495 for the trust package and asked their daughter to get involved in the

trust arrangement.  The Morrows also transferred intangible assets to the trust, such as the business name and the ongoing business operations of I.D.F. Pest Control Co.

The business was operated in substantially the same manner both before and after the trust was created.  The business and its activities continued under the same name, used the same invoices and service contracts, used the same Texas Structural Pest Control business license, used the same taxpayer identification number on the Texas Sales and Use Tax Returns, used the same insurance policies, and used the same business equipment.  After the establishment of the trust, Peter Morrow continued to work for the business and Charlotte Morrow continued to manage the business.

The trust did not have an independent trustee.  The Morrows had control over the trust activities and trust assets. Charlotte Morrow was named as the sole trustee of the trust, and she had exclusive control over the trust and the business operations.  Additionally, Peter Morrow was named as successor trustee, had signature authority over the trust's bank account, and, on occasion, paid the personal expenses of the Morrows from the trust bank account.  Under the terms of the trust, the trustee also had the power to appoint successor trustees and cotrustees.

Petitioners assert that the personal expenses that were paid from the trust bank account were accounted for as a distribution and that only the legitimate business expenses were deducted. Even so, the Morrows had the ability to control fully the trust's activities and trust assets for their own benefit because no independent trustee had any meaningful control over the management of the trust.

No one other than the Morrows held any meaningful economic interest in the trust because, under the terms of the trust agreement, Charlotte Morrow was the named beneficiary and Peter Morrow was the successor beneficiary of the income and principal of the trust.

Petitioners argue that the Morrows achieved benefits from operating their sole proprietorship within a trust and not forming a corporation because:  (1) The trust could protect the business assets from their personal liabilities and conversely protect their personal assets from liabilities arising from the business operations; (2) the trust could avoid the State franchise tax imposed on the profits of a corporation, which would have been approximately $1,105; (3) the trust would not have to pay the State incorporation filing fee of $300; and (4) the trust did not have to maintain corporate formalities, such as shareholder minutes.

Peter Morrow testified at trial about the Morrows' decision to use a trust entity to operate their sole proprietorship:

> Q  Do you know why you chose a trust over choosing an S corporation?
>
> *    *    *    *    *    *    *
>
> A   * * * I don't know how we came to that conclusion, other than the fact that my main concern was to have protection against lawsuits.  You know, and if I could get any tax benefits out of it, I left that up to my tax people.

Petitioners' argument that a trust had advantages over an S corporation misses the point.  The incorporation alternative is not an issue here.  Petitioners chose the form of a trust and are responsible for the consequences of their decision.  Those consequences are not the same as corporate form.  The U.S. Supreme Court has observed repeatedly:  "while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, * * * and may not enjoy the benefit of some other route he might have chosen to follow but did not." Commissioner v. Natl. Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974) (citations omitted).

On the totality of the evidence, giving more weight to the objective facts than to petitioners' unsupported statements of subjective intent, we conclude that the primary purpose of the Morrows in establishing the trust was to avoid employment tax. The trust lacked independent economic substance.  The Morrows

were, in substance, the grantors of the trust.  Thus, the income and expenses from the operations of the pest control business during the years in issue are attributable to the Morrows and not to the trust.  The Morrows are liable for self-employment taxes on the net income of I.D.F. Pest Control Co. for the years in issue.

To reflect the foregoing and concessions of the parties,

<u>Decisions will be entered under Rule 155</u>.