OPINION. Ratjm, Judge: McDonald Island consisted of two tracts of land, Henning Tract and McDonald Tract, both used for farming. In addition, gas had been discovered under the island in 1935, and thereafter the gas rights were leased to Standard Oil Company of California. Petitioner had owned the Henning Tract for a long period of years. The mineral rights under that land had a zero basis to petitioner. On June 27, 1946, petitioner transferred the Henning Tract, including the mineral rights, to its wholly owned subsidiary at its original cost, which was substantially less than its then fair market value as well as less than its book value. In December 1946, when a sale of the gas rights under the entire island to Standard Oil had already been arranged, the mineral rights, including gas rights, under the Henning Tract, were declared as a dividend by the subsidiary and re-conveyed to the petitioner. The value of the gas rights at that time was $230,000. Shortly thereafter the sale was consummated, and the portion of the sale price allocable to the gas rights under the Henning Tract was $230,000. Although these gas rights had a zero basis in the hands of petitioner for a number of years, its contention is that by reason of the conveyance to the subsidiary and reconveyance some 6 months later as a dividend, these rights acquired a stepped-up basis equal to $230,000, with the result that it realized no gain upon the sale. The Commissioner argues that the transfer of the mineral rights to the subsidiary was not bona fide, that no business purpose was served or intended by such transfer, that the possible sale to Standard Oil was contemplated from the beginning, and that the round-trip of - these rights from parent to subsidiary and back to parent again was engineered for the purpose of attempting to obtain a stepped-up basis.[1] The question is largely one of fact, for, if it be true that the round-trip of the mineral rights was in fact a sham and lacking in bona fides, petitioner’s basis for the rights, namely zero, will be unaffected, and its gain on sale must be measured from that basis. In cases of this character the absence of any direct evidence of sham is not surprising. If petitioner intended from the beginning, through those who controlled its affairs, to transfer the entire Henning Tract to the subsidiary with the expectation of a retransfer of the mineral rights, it is hardly likely that such intention would be admitted. The intention, if it did exist, would ordinarily have to be established by circumstantial evidence. And in this connection it is important at the outset to bear in mind the matter of burden of proof. Petitioner’s counsel completely misconceives the burden of proof when he says in his reply brief “In order successfully to attack the conveyance of Henning Tract as to mineral rights, the Commissioner must show that they were included with the intent to pull them back again into the petitioner for purposes of ultimate disposition.” The burden is not upon the Commissioner. The burden is upon the petitioner to overcome the correctness of the Commissioner’s determination. Moreover, the requisite business purpose or intention must be established by evidence; it is not enough for counsel to theorize as to what the intention might have been. It must be shown by satisfying evidence that the alleged business purpose was in fact entertained as a motivating factor by petitioner or its responsible representatives; a possible business purpose conceived after the event in order to give color to the transaction cannot retroactively supply the required bona fides which might otherwise be lacking. We have concluded, after hearing the witnesses and studying the entire record, that the alleged business purposes relied upon by petitioner to explain the manner in which the transaction was carried out were colorable only, and that the round-trip.of the mineral rights was contemplated from the start and was lacking in bona lides. Prior to the issuance of the deficiency notice in this case, petitioner filed a written protest against the proposed deficiency. The protest stated two reasons for the transfer of the mineral rights to petitioner’s subsidiary, as follows: The transfer was made so that all the McDonald Island property would be owned by one company and thereby lend itself to a more efficient conduct of farming operations. Also, all the land could then be pledged as collateral to a trust deed note with a bank. * * * Each of these reasons is spurious. While it may be true that the farming operations on McDonald Island could be more efficiently conducted if all the surface rights were in a single ownership, the ownership of the mineral rights is completely immaterial in this connection. Indeed, when petitioner on June 27,1946, transferred to its subsidiary the Henning Tract and its interest in the surface rights in the McDonald Tract, it at the same time retained and did not transfer to the subsidiary the mineral rights in the McDonald Tract. Moreover, the December 21, 1946, resolution of the board of directors of the subsidiary, providing for the retransfer of the mineral rights to petitioner, explicitly recited that “none of the rights * * * are necessary for the operation of the business of this corporation and may be distributed to the stockholder thereof by way of a dividend in kind.” It is quite plain that they were no more necessary to the business of the subsidiary on June 27,1946, when they were first transferred by petitioner as part of the entire Henning Tract. The second reason suggested by the protest, i. e., that the land could be pledged as collateral to secure a bank loan, is equally spurious. The evidence shows that the loan in question had already been negotiated, and that it was to be secured by a deed of trust with respect to the entire island, excluding, however, all mineral rights. It was therefore misleading to suggest that the proposed bank loan was a motivating factor in the transfer of the mineral rights to the subsidiary. In the testimony before us, the reasons set forth in the protest were repeated and embellished. However, we are firmly convinced on this record that these reasons did not in fact play any part whatever in the transfer of the mineral rights. And other reasons advanced, some of them merely variations of the foregoing, appear to us to be afterthoughts. We are satisfied that the transfer of the mineral rights had in fact no business purpose whatever, other than to set the stage for an attempt to establish a stepped-up basis for these rights. It should be remembered that petitioner was encountering difficulty with Standard Oil in connection with Standard’s leases of these gas rights. One way of settling the dispute was to have Standard purchase the rights. Standard had made an offer of $500,000 for the gas rights under the entire island in November 1945. The offer was considered too low and was not accepted. The conflict between Standard and the petitioner persisted. The transfer of the Henning Tract to the subsidiary took place on June 27, 1946, and shortly thereafter, in July 1946, petitioner’s president offered to sell the gas rights under the entire island to Standard for some $800,000. Here then was a situation where petitioner knew that a sale to Standard was a distinct possibility, provided that a satisfactory price could be agreed upon, and where its president[2] reactivated the negotiations with Standard after transferring the rights to the subsidiary. To be sure, the evidence is circumstantial, but it is strong and convincing that when petitioner transferred the Henning Tract to the subsidiary it intended to recapture the mineral rights. True, it was not able to come to terms with Standard in July or August of 1946, but negotiations were opened again in December of the same year, and an agreement was finally reached at that time. It is no answer to say, as does petitioner’s counsel, that petitioner merely employed a standard form of deed on June 27, 1946, when it transferred Henning Tract in its entirety to the subsidiary. Petitioner at that time was fully aware of a separate interest in the mineral rights, for, on the same day, its deed of its interest in the McDonald Tract to the same subsidiary expressly excluded the mineral rights. And later, on the same day, the deed of trust to secure the bank loan expressly excluded the mineral rights under the very tract here involved. We are satisfied on the evidence that the course of action taken by petitioner was deliberate and calculated, without business purpose other than to establish an artificially stepped-up basis. The gas rights in the Henning Tract had a zero basis in petitioner’s hands, and we hold that the planned excursion of these rights from petitioner to its subsidiary and back again to petitioner could not result in any stepped-up basis. The intermediate steps were lacking in bona fides, and must be ignored. Decision will be entered for the respondent. Of course, on petitioner’s theory, the retransfer of the rights to it by the subsidiary would result in petitioner receiving a taxable dividend in the amount of $230,000. However, by reason of section 26 (b), I. R. C. of 1939, 85 per cent of that dividend is received tax free. In substance, therefore, the tax advantage to petitioner would be that it would be chargeable with dividend income in the amount of only 15 per cent of $230,000, while the entire gain of $230,000 upon sale of the gas rights to Standard Oil would be tax free. The protest falsely stated that after the transfer, “the petitioner was approached by a third party desiring to purchase all the known mineral rights located on the McDonald Island,” Identifying the third party as Pacific Oil Company. The fact is, as plainly shown by the evidence, that it was petitioner’s president who approached Standard. The initiative at this time did not come from Standard or its subsidiary, Pacific Oil Company. This Is a difference of great importance in the context of this case, for it shows that petitioner sought to bring about a sale of the mineral rights shortly after transferring them to the subsidiary. The affirmative step thus taken by petitioner within so short a period is highly persuasive that the transfer was made with a view towards attempting to bring about a sale thereafter.