IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 2000 Session

## NANCY D. BRACKEN, v. RICHARD EARL, d/b/a FINANCIAL SERVICES COMPANY

**Direct Appeal from the Circuit Court for Knox County**
**No. 2-506-97     Hon. Harold Wimberly, Circuit Judge**

**FILED AUGUST 7, 2000**

**No. E2000-00202-COA-R3-CV**

Plaintiff sued to recover monies paid to defendant. Defendant defended on the grounds that the monies were paid to a trust fund for which he was not liable. The Trial Court held the trust had no validity and entered judgment against the defendant. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Christopher D. Heagerty, Knoxville, Tennessee, for Appellant Richard Earl, d/b/a Financial Services Company.

David H. Stanifer, Tazewell, Tennessee, for Appellee, Nancy D. Bracken.

### OPINION

In this action to recover monies placed "in trust and possession" of defendant, the Trial Judge entered judgment for plaintiff for the monies paid over to defendant, plus interest. Defendant has appealed.

Plaintiff is an 82 year old widowed woman, and according to the defendant, Richard Earl, he is the managing director of Financial Services Company ("FSC"), a trust domiciled in Arizona.

Defendant met several times with plaintiff, posing an investment opportunity where the plaintiff would invest money with FSC that would be used to finance a treasure hunting venture in Florida. On July 13, 1993, plaintiff delivered to defendant a draft payable to FSC in the amount of $50,000.00. On that date, plaintiff was given a promissory note, executed by FSC and signed by Earl, promising the repayment of the $50,000.00 on or before July 19, 1994 at the rate of ten percent per annum. On August 25, 1993, plaintiff delivered another draft in the amount of $50,000.00 payable to FSC. Prior to that day, on August 11, 1993, a second promissory note was executed by FSC and signed by Earl promising repayment of $50,000 on or before October 1, 1994. Plaintiff delivered another $10,000.00, in cash, in October of 1993 for investment in FSC.

Over a period of months, plaintiff received a total of $16,000 from Earl and FSC in the form of seven payments of $400.00 and one payment of $13,200.00. When the payments ended in October of 1994, plaintiff began making inquiries abut the status of the repayments, and when she received no information, she demanded, through legal counsel, an accounting from Earl of the funds she invested, but to no avail, and she then brought this action.

The evidence at trial reveals that FSC was established in Arizona by John Michael Crim and Robert H. Kilgore on July 30, 1992. On the date the trust was created, Crim appointed Dana T. Houtz and Steven E. Duke as Trustees. Following the creation of the FSC Trust, defendant Richard Earl was appointed and elected to serve as managing director of the Trust and an Agreement and Contract was entered into between FSC and Earl. Earl testified that he accepted the position of managing director in late 1992 or 1993. His appointment is documented in the undated minutes of an alleged meeting of the Board of Trustees. The minutes of the alleged meeting state that the trustees and Mr. Earl executed a contract for Mr. Earl's employment which is "attached hereto." There is no contract included with the minutes or anywhere in the record. Earl was asked at trial if he had "some contract as to what [he] will receive [as compensation]." He stated that "Financial Services has." He testified that he had not received any money from the deal, but was to be paid "down the road on profits from the finds."

The evidence establishes that Earl had complete control over the operation and management of the "trust." As managing director, he was given the power to buy, sell, convey, reconvey and encumber any and all real property for the trust organization, along with the authorization to be the signatory on all accounts. He described his function as "to manage the affairs of Financial Services Company" which consisted of "facilitating the loans, as well as paying the money" in relation to the investment deal with the 500 Trust. There were no other functions of FSC that Earl was aware of, as the Trust was only created a few months before Earl became involved with it.

Defendant is the only employee of Financial Services Company, and does not have anyone working for him. He testified that no one else has the authority to sign anything on behalf on FSC other than himself.

During trial, defendant was unable to identify the trustees of the trust. When pressed

for names, he stated that he believed that Michael Crim was one of the trustees. However, the documents in the exhibits reveal that Crim is not a trustee, but was rather the "Creator" of the trust who appointed Houtz and Duke as trustees and transferred the property of the trust to the newly appointed Board, and Crim was released from all duties and obligations associated with the trust. Defendant was also unclear as to who were the beneficiaries, and said that the trust was its own beneficiary because "it's a contract under contract law and it's headed by its own entity." Other evidence establishes that defendant treated Financial Services Company as an extension of himself, in dealing with another investor, plaintiff's daughter. In that case, defendant signed a note for the money personally, and not as managing director.

After hearing the evidence, the Trial Judge made the following findings:

I suppose this case really comes down to these two notes of $50,00 each. We introduced them as Exhibit 1 and Exhibit 3. . .

The Defendant's position about these notes here is that he is protected by this entity called Financial Services Company. He's submitted these documents, some sort of form, a document which says down at the bottom copyrighted in common law by the Commonwealth Trust Company. It's a document that has about the same validity as a mail order diploma, if that. There is no Financial Services Company. It simply is the Defendant. . .

I don't know about ordering an accounting. I don't see in the Court's view that these notes are valid or it makes any difference what happened to the money, so the Court declines to do that.

Our review of the factual determinations in this case are *de novo* upon the Record of the Trial Court. T.R.A.P. 13(d). These findings are presumed to be correct, unless the evidence preponderates against those findings. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Knight v. Lancaster*, 988 S.W.2d 172, 174 (Tenn. Ct. App. 1998). The evidence preponderates that defendant had complete control over the trust and that it was set up to protect defendant from liability.

There is a paucity of authority in Tennessee addressing the issues raised by these types of trust arrangements and their use in avoiding individual liability. Our Courts have, however, addressed in similar circumstances under which a *corporate* entity may be disregarded and liability placed on the individual. The controlling principles of this "alter ego" doctrine are set forth in *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522 (Tenn. 1985):

A corporation, of course, has an existence separate and distinct from that of the owners of its capital stock, but this separate entity may be disregarded upon the showing of special circumstances, such as, that the corporation is a sham or dummy

so that failure to disregard it would result in an injustice. (Citations omitted).
The conditions under which the corporate entity will be disregarded vary according to the circumstances present in each case and the matter is particularly within the province of the trial court. Moreover, a determination of whether or not a corporation is a mere instrumentality of an individual or a parent corporation is ordinarily a question of fact for the jury.

*Id*. at 526.

The United States Tax Court has dealt with several cases in which common law trusts similar to the one in this case were set up as a means of avoiding individual tax liability. See *Harrold v. Commissioner of Internal Revenue*, 1991 WL 102700 (U.S. Tax Ct. June 17, 1991) *affd. per curiam* 960 F.2d 1053 (8th Cir. 1992); *Estate of Yeoham v. Commissioner of Internal Revenue*, 1986 WL 21641 (U.S. Tax Ct. Sept. 11, 1986) *affd. per curiam* 826 F.2d 11 (5th Cir. 1987).

The Courts have repeatedly held that such a "sham" requires the court to look not only at the organizational documents and surface transactions of the entities involved, but also at their "economic realities." *See Frank Lyon Co. v. United States*, 435 U.S. 561 (1978); *Blueberry Land Co. v. Commissioner*, 361 F.2d 93, 101 (5th Cir. 1966) affg. 42 T.C. 1137 (1964); *Weyl-Zuckerman & Co. v. Commissioner*, 23 T.C. 841, 847 (1955), affd. per curiam 232 F.2d 214 (9th Cir. 1956).

One of the factors focused upon by the Tax Court is which person or entity actually controls the earning of the income rather than who ultimately receives it. See *Harrold* at WL 102711. This includes who is the trust manager, who has signatory authority, and who keeps the records and minutes. *Id*. The Court also focuses on the role of the trustees and whether they are independent or nothing more than "straw men," allowing the manager complete and independent control over the property in the trust. *See Harrold* (citing *Furman v. Commissioner*, 45 T.C. 360 (1966) affd. per curiam 381 F.2d 22 (5th Cir. 1967)).

In Trial Court's findings that defendant has complete control over the assets of the trust and that the trustees are nothing more than names on paper is supported by a preponderance of the evidence. T.R.A.P. Rule 13(d). Earl had unlimited and exclusive power to manage the trust and was solely responsible for obtaining loans from investors and then investing with the treasure hunting operations. The Trustees are not involved at all with the day-to-day operation or the management of the Trust, and defendant could not identify who the trustees were, and had had little contact with any of them. There are no records of meetings other than the alleged meeting in which Earl was appointed managing director. By the documents relinquishing all control over the trust to Earl by the trustees, they breached their duty as fiduciaries. We find no substance to this so-called trust, beyond a means for defendant to attempt to protect himself from liability when investing other people's money in risky ventures.

The Trial Judge, in effect, found that defendant is the "alter ego" of the trust, and we agree that under all the circumstances the defendant is liable to the plaintiff for the monies received.

We affirm the judgment of the Trial Court and remand, with cost of the appeal assessed to defendant, Richard Earl.

_____
HERSCHEL PICKENS FRANKS, J.